Opinion delivered June 11, 1887.

## No. 5400.

## CRUZ RODRIGUEZ v. THE STATE.

1. PRACTICE—SPECIAL VENIRE—AMENDMENT.—The trial court has authority to require the sheriff, upon application of the prosecuting counsel, to so amend his return upon the special venire as to show the diligence used by him in attempting to obtain service upon the veniremen not summoned.
2. SAME.—It is not required that every person drawn as a juror upon a special or other venire shall be summoned, but only that the sheriff shall exercise reasonable diligence to summon them. An accused is not entitled to process for veniremen not summoned.
3. SAME—LEADING QUESTIONS.—Intellectual weakness or impotent or feeble comprehension of a witness constitutes an exception to the general rule that leading questions can not be propounded. See the opinion for circumstances under which it is *held* that the rule in the first instance was not infringed, and that, while infringed in the second instance, it was without prejudice to the accused, and therefore does not constitute reversible error.
4. SAME—IMPEACHING TESTIMONY.—It is a well settled rule of practice that it is only when an impugned witness has denied, either directly or by qualification, having made statements contradictory of his or her testimony upon the trial, that proof of such statements is admissible.
5. SAME.—Trial judges are prohibited by statute from discussing or commenting upon evidence of disputed admissibility, and are required to decide simply whether the proposed evidence is admissible. But the

error in this case is immaterial, inasmuch as the proposed evidence was rejected, and the remarks of the judge could not have influenced the jury nor have prejudiced the defendant.

6. MURDER—FACT CASE.—See the statement of the case for evidence *held* sufficient to support a capital conviction for murder.

APPEAL from the District Court of Uvalde. Tried below before the Hon. T. M. Paschal.

The death penalty was assessed against the appellant in this case, upon his conviction in the first degree for the murder of Pancho Garcia. The murder was alleged to have been committed in Uvalde county, Texas, on the eighteenth day of October, 1885.

Alcaria Contreras, the wife of Pancho Garcia at the time of his death, was the first witness for the State. She testified that she was unable to designate the day or month of the year, 1885, in which the killing occurred, but she knew it was the month which included St. Peter's day. Prior to that time the defendant and deceased had trouble about a pair of mules which the defendant stole from the deceased. Just before the homicide the deceased occupied a sitting posture on the bed in the room of his house in Uvalde county, then occupied by the witness and her daughter, Mariana Garcia. A man, whom by his voice the witness readily recognized, called the deceased by name from outside of the house. The witness, fearing that her husband would be injured by the defendant, protested against his going out of the door, and advised him to invite the defendant to come in. She caught deceased by the coat and tried to prevent him from going out of the house, but failed. When the deceased stepped out of the door, followed closely by the witness, he was confronted by the defendant, armed with a carbine. Defendant immediately raise his carbine, and, in the presence of the witness, shot the deceased. Deceased fell at the first shot, and called for witness to help him up. While the witness was endeavoring to help him up the defendant fired two more shots at deceased and ran off. Witness and her daughter Mariana then helped the deceased to bed, and sent for Doctor Applewhite. Deceased was still alive when the doctor arrived, but died shortly after the doctor left. He died from the effects of the wound inflicted by the defendant.

On her cross examination the witness stated that she was married to the deceased by a priest, in Uvalde county, Texas,

about four years before this trial. She and her husband had been back from a three months sojourn in Mexico, about six months before the homicide. They met the defendant for the first time in Piedras Negras, when they were on their way back to Uvalde county. The homicide occurred just about or near daybreak. Neither the deceased nor the witness had got up for the day when defendant called deceased. The yard fence at which the defendant stood when he fired the fatal shot was about seven paces from the house door. The deceased fell just outside the door. But one—the first—shot struck the deceased. The other two struck a wagon standing near. The witness remembered that she testified before the coroner's jury at the inquest upon the body of her husband. She denied that she testified before that inquest that "the killing took place about four o'clock," or that "he, deceased, went out, and the next thing I heard was three shots fired, when I ran out and found my husband lying by the gate, shot;" or that "he did not speak a word after we found him;" or that "I did not see any one else, and know nothing more." The witness then corrected her testimony and admitted that she did make the several statements quoted above on the inquest. On her re direct examination, the witness stated that the reason she testified as stated above, on her examination before the inquest, was that the defendant was still at large—"in the brush"—and she was afraid to testify to the truth.

Mariana Garcia, the daughter of the deceased and the first witness, testifying for the State, gave substantially the same account of the homicide as did her mother. She recognized the defendant by his voice, when he called, and saw and identified him when he fired the third shot and turned and ran off. This witness stated that the circumstances of the homicide frightened her and kept her in a state of fright until after the defendant was arrested and placed in jail, when, for the first time, she told any one that she knew the particulars of the homicide and who committed it.

The only material fact testified to by B. M. Patterson, the next witness for the State, was that the witness Alcaria Contreras was very much scared and frightened when she appeared before the inquest over the body of her husband and testified.

The State closed.

The defendant offered to read in evidence the written testimony of Alcaria Contreras, taken before the jury of inquest,

but the court rejected it, except the following sentences: "The killing occurred about four o'clock, on the morning of October 18, 1885. When I went out to where my husband was shot, I saw no one else there."

No brief for appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

WILLSON, JUDGE. Nine several bills of exception were reserved by the defendant, relating to the rulings of the court upon motions of defendant to quash the special and additional venires, and returns of the sheriff thereon, and other rulings made in the formation of the jury. None of these exceptions appear to us to be well taken. It was proper for the court, upon the application of the district attorney, to have the sheriff to amend his return upon the special venire, and thus meet the defect complained of in defendant's motion to quash said venire. (Murray v. The State, 21 Texas Ct. App., 466; Sterling v. The State, 15 Id., 249; Washington v. The State, 8 Id., 377.) The amended return of the sheriff showed fully the diligence he had used in endeavoring to summon the jurors not summoned. The trial judge was satisfied with this amended return and the reasons therein stated for a failure to summon those not summoned, and we agree with the trial judge that the reasons stated for such failure are sufficient. It appears from the record that more than ordinary efforts were used by the court and the sheriff to obtain every person named in the venires. It is not required by the law that every person drawn as a juror upon a special or other venire shall be summoned, but only that reasonable diligence shall be exercised by the sheriff to summon them. (Code Crim. Proc., arts. 614, 615; Murray v. The State, supra; Lewis v. The State, 15 Texas Ct. App., 647; Charles v. The State, 13 Id., 658.) Defendant was not entitled to process for the jurors not summoned. (Code Crim. Proc., art. 618; Osborne v. The State, ante, p. 431.)

II. It was not error to permit the district attorney to ask the witness A. Contreras leading questions. It is explained by the trial judge that this witness was a very ignorant Mexican woman, dull of comprehension, not appearing to understand well questions propounded to her by a thoroughly competent interpreter. Such being the mental condition of the witness, she came within

an exception to the general rule which prohibits leading questions to be asked. (1 Whart. Ev., sec. 501.)

III. It was error, we think, to permit a leading question to be propounded by the district attorney to the witness Patterson, as this witness did not come within any of the exceptions to the general rule disallowing such questions. But permitting a leading question improperly, will not be revised on appeal in the absence of a showing of prejudice thereby to the defendant. (Montgomery v. The State, 4 Texas Ct. App., 140; Henderson v. The State, 5 Id., 134). In this instance it does not appear that defendant might have been prejudiced. The answer elicited by the objectionable question was that the witness Contreras, when she testified before the coroner's jury, was scared and excited. The witness Contreras had also testified to the same fact, and no attempt was made by the defendant to contradict her statement. The error being one without prejudice to the defendant, the conviction should not be set aside because of it.

IV. It was not error to reject the written testimony of the witness Contreras, taken before the coroner's jury. This testimony was offered by the defendant for the purpose of impeaching her testimony on this trial. In laying the predicate for the admission of this written testimony, the witness was asked if she had not made statements before the coroner's jury, contradictory of her testimony on this trial, which statements were specified to her. She admitted that she had made said statements, and gave as a reason for making them that she was scared, and afraid of defendant, who had not then been arrested. It is a well settled rule that it is only upon a denial, direct or qualified, by the witness, that contradictory statements were made, that proof of them is admissible. (Whart. Crim. Ev., sec. 483.)

V. It was error for the judge, in rejecting the written testimony of the witness Contreras when offered by defendant, to make the comments in relation thereto, complained of in defendant's bill of exception. "In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same, or its bearing in the case, but shall simply decide whether or not it be admissible." (Code Crim. Proc., art. 729; Wilson v. The State, 17 Texas Ct. App., 525.) But here again is an error which we regard as immaterial, because without prejudice to the defendant. The remarks of the judge objected to were made concerning testimony which was rejected when offered, and this testimony not being before the jury, for their consideration, his

remarks could have had no influence upon their minds, as we can perceive. We do not think the conviction should be set aside for this error.

We have cautiously and thoroughly examined and considered every question presented in the record, and find no error which would justify a reversal of the judgment. The evidence is direct that the defendant committed the murder, and there can be no question but that it was murder in the first degree. The judgment is affirmed.

*Affirmed.*