## F. E. Simpson v. The State.

### No. 3017.    Decided May 31, 1905.

**1.—Assault to Murder—Exhibiting Wound—Evidence.**

See statement of facts in the opinion under which, as explained by the court, there was no error in what occurred with reference to prosecutor exhibiting his wound or scar to the jury.

**2.—Same—Evidence—Declarations of Third Parties—Limiting Testimony— Threat.**

Defendant who was being tried for assault to murder introduced a witness who testified that he told defendant a short time before the alleged assault occurred that prosecutor had it in for him and would kill him if he did not mind; and on cross-examination this witness was asked over defendant's objection to state the conversation between himself and prosecutor from which witness arrived at such conclusion, and which was made in the absence of defendant; and witness answered that prosecutor said, if defendant did not get off the place he would make it damn hard for him, and the court limited this testimony as only affecting the credibility of the witness. Held error, first, because declarations of third parties made in the absence and without knowledge of defendant are inadmissible, and second, after being admitted the testimony should not have been thus limited as it was original evidence of prosecutor's threat.

**3.—Same—Argument of Counsel—Withdrawn by Court.**

Where the argument objected to was either legitimate, or if doubtful the counsel was corrected by the court and the remarks withdrawn from the jury, there was no error.

**4.—Same—Refused Charge—Specific Allegation Limits Prosecution.**

Where the testimony of defendant showed that besides the shot that struck prosecutor and which he fired in self-defense, he fired two shots under excitement without aim or purpose, the indictment charging assault by shooting with a pistol, and not an allegation of an assault to murder in general terms, and the court charged as to self-defense confining the case to said first shot, and also charged on aggravated assault, but refused to submit a requested instruction to acquit defendant if he fired the last two shots as claimed by him and the first shot in self-defense. Held error, because the indictment alleged the specific means and manner of the assault, and because the court charged an aggravated assault, and the defendant could not be convicted thereof under the indictment for firing the last two shots according to defendant's testimony.

Appeal from the District Court of Hamilton. Tried below before Hon. N. R. Lindsey.

Appeal from a conviction of assault with intent to murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Main & Chesley* and *A. R. Eidson*, for appellant.—On question of admitting declarations of third parties, etc. Thompson v. State, 29 Texas Crim. App., 208; Hargrove v. State, 33 Texas Crim. Rep., 431; McIver v. State, 37 S. W. Rep., 745; Dawson v. State, 38 Texas Crim. Rep., 50; 41 S. W. Rep., 599. On question of self-defense and the firing of the last two shots, etc. Irvine v. State, 20 Texas Crim. App., 12; Reynolds v. State, 8 Texas Crim. App., 412; Bonner v. State, 29 Texas Crim. App., 223; Danforth v. State, 69 S. W. Rep., 159; Thomas v. State, 34

Texas Crim. Rep., 481.; Benavides v. State, 31 Texas Crim. Rep., 173; Gather v. State, 81 S. W. Rep., 717.

*Howard Martin,* Assistant Attorney-General, and *G. H. Goodson,* for the State.

HENDERSON, JUDGE.—Appellant was convicted of an assault with intent to murder, and his punishment assessed at confinement in the penitentiary for a term of five years; hence this appeal.

The statement of facts shows that the difficulty, which was the occasion of the prosecution, arose between appellant and prosecutor Brown over a rent contract, or a right claimed by appellant to rent the land of the prosecutor. It seems that appellant had rented a portion of the prosecutor's farm for the year 1903; that was under a written contract. He continued the rental during the year 1904, but there was no written contract. Some time during the latter portion of 1904, in October, prosecutor presented to appellant a rental contract in writing for him to sign. This provided that appellant should not only give one-fourth of the cotton and cotton-seed which he had been theretofore doing, but in addition should haul the fourth bale of cotton to the gin and haul the seed back out of the fourth bale and put it in prosecutor's barn. The controversy arose over this clause of the contract. Appellant refused to sign it, but insisted that he had previously, sometime in August, made an agreement with prosecutor to continue the rental of said land as theretofore. The State's testimony tends to show that prosecutor denied any such agreement, and after appellant refused to sign the written contract, he insisted on appellant making a settlement of accounts between them and moving off the land. On the day of the homicide, it appears from the State's testimony that appellant and prosecutor had agreed to make a settlement and appellant was to move off the land. In pursuance of this agreement appellant, who had broke some land during the fall, was to be paid $1 an acre for the same, and they went to measure this land in the morning in order to make a settlement. Appellant's proof, however, tends to show that it was not this land but another piece of stubble land that appellant owed prosecutor for furnishing a machine to mow the wheat or oats; that the same was to be paid for at the rate of 25 cents an acre, and that this land was the land they went to measure. Appellant denies that he agreed to make the settlement to move off the land, but that he was only arranging to make a settlement with prosecutor for what he owed him. It is agreed by both parties that the broken land was measured by the parties with a rope, and after this measurement they went to appellant's house, and on the request of appellant's wife, prosecutor stayed there to dinner, they having arrived there about the dinner hour. In the mean time he figured out the result of the measurement of the land, and according to the State's testimony stated the items of settlement pro and con between him and appellant, and the

same was satisfactory, and appellant understood he was to make a settlement and move off the land. However, appellant agrees that prosecutor made the figures showing the state of account between them, in order that they might settle the same, but denies that there was any understanding that he was to move off the land. The testimony on both sides is to the effect that the parties acted at the house during dinner in a perfectly friendly manner. After dinner prosecutor arose from the table before appellant and the hired hand, stating he had to go and look after some stock, and went out to where his buggy was hitched. The testimony of both parties agrees, that shortly after, and while prosecutor was in the act of getting in his buggy, appellant followed out. Here, according to the testimony of the State, appellant protested against removing from the place, and told prosecutor it would ruin him. Prosecutor stated in effect that they had met peaceably and they should part peaceably. In the mean time he had gotten in his buggy, and had started to drive off. He noticed appellant in the act of following the buggy; that when he leaned over to get the lines, appellant was still following behind, and as he was in the act of looking around, appellant shot him in the back. It took effect three to four inches to the left of his back-bone, and ranged through his shoulder and down into his lung. At the shot the horse immediately started to run, and appellant fired two other shots, neither of which took effect on prosecutor. Prosecutor was not able to state the interval between the first shot and the two subsequent shots, but the interval was longer between the first and second shots than between the second and third shots; that he had no pistol, or weapon of any kind. Appellant's version of the shooting is somewhat different. He says that he told prosecutor: "That he had rented his place fair and square, and that he was not going to give it up. Prosecutor replied, 'If you don't you will be damned sorry for it.' He then said, 'You know this will ruin me. And you waited so late to bring this contract that you knew I could not get another place, and you thought I would have to sign the contract.' Prosecutor said, 'Oh well, you damn son-of-a-bitch, there has been enough said, now I will just fix you now.' And he stooped over and got his pistol, and appellant shot him." At the time he shot, appellant was standing at the left hind wheel; that he shot him because he was getting his pistol to shoot him. He just stooped over to get his pistol, and when he started to raise up, he started to turn around, and appellant shot him. He says further: "I fired three shots only. I just pulled the pistol and shot as fast as I could pull the trigger. It was a double action pistol; that when he shot the two second shots, prosecutor's horse was in motion," though he states he was not running fast, but was trotting. This is a sufficient statement of the facts to discuss the questions of law urged by appellant for reversal.

As explained by the court we do not think there was any error in what occurred with reference to prosecutor exhibiting his wound to the jury. Counsel for the State, during the examination of witness

asked him to remove his clothes and show the jury the scar or wound inflicted by appellant. Counsel for defendant objected on the ground that there was no controversy as to the location of the wound or the range of the bullet, or the seriousness of the wound, and to expose said scar would not shed any light on the case, and was calculated to influence the minds of the jury and prejudice them against defendant. In the mean time prosecutor had removed his coat and was standing with his back to the jury. The court sustained the objection, and remarked to witness he could point out the place where the bullet entered his body, without removing his clothes. Whereupon counsel for State asked the district attorney to step behind said witness, and put his hand on the place witness indicated that the bullet entered his shoulder; and while said attorney was pointing out said place where the bullet entered, counsel for defendant stated to the court there was a rent place in witness' shirt, and the scar from the wound could be seen by the jury. To which the court replied that he did not know such to be the fact. There was some controversy upon this point: whereupon the district attorney admitted to the court that there was an opening in witness' shirt, and the scar was exposed through it. The court explains this by stating, that when it was made known to him there was a rent in witness' shirt, and the wound might be exposed to the jury, he sustained the objection and instructed the witness to put on his coat, and take his chair, stating he would not allow the wound shown the jury, unless there was a dispute as to the location of the wound. In this action of the court we fail to see any error, even if it be conceded that the jury may have seen the scar. Its description is not shown in the bill of exceptions. Evidently it had healed and was not of such character then as to inflame the minds of the jury.

A. B. Simpson was introduced by appellant and testified that he told appellant a short time before the alleged assault occurred that prosecutor Brown had it in for him and would kill him if he did not mind. When this witness was being cross-examined by the State, he was asked to state the conversation between himself and prosecutor Brown, which was the occasion of his informing appellant that Brown had it in for him, and would kill him if he did not mind. This was objected to on the part of appellant on the ground that it was a conversation occurring between himself (witness) and prosecutor Brown, in the absence of appellant, and that appellant was not shown to have had any knowledge of the matter, and the same could not be introduced in evidence to affect him. The court overruled the objection made by appellant, and the witness stated that prosecutor Brown said, if Finis (meaning appellant) did not get off the place he would make it damn hard for him. It seems that the proof originally introduced by appellant was not a threat on the part of the prosecutor Brown, but a mere inference or opinion of the witness formed from what Brown should have said to him. It may be, upon proper objection, this testimony should have been excluded; Crockett v. State, 8 Texas Ct. Rep.,

621. However, the question here is, did it authorize the State to prove on cross-examination the conversation which created the impression or opinion in the mind of the witness. It is a general rule that acts or declarations transpiring between third parties, and not brought home to a defendant, are not admissible in evidence against him. Appellant is not shown to have had any knowledge of this conversation, and as the language proven is susceptible of other interpretations or inferences than that drawn by the witness in his statement to appellant, "that if he did not mind prosecutor would kill him," it might be calculated to injuriously and wrongfully affect appellant. Therefore, we do not believe the court acted correctly in the admission of said testimony. Moreover the limitation by the court of said evidence, that it might be considered by the jury alone for the purpose of affecting the credibility of the witness A. B. Simpson, was unauthorized. It does not occur to us that it was impeaching evidence. If it was introducible at all it was introducible as original evidence of the real threat made by prosecutor against appellant, but as we have seen it was not introducible for this purpose.

Appellant excepted to a number of statements of private prosecutor in the argument of the case. But an examination of the same, in connection with the explanation given by the court, discloses that the argument was either of a legitimate character, or if doubtful in that respect, that the court corrected counsel and withdrew it from the jury.

Appellant excepted to the action of the court refusing to give a certain requested special instruction, under the following circumstances: At the conclusion of the judge's charge, and just before dinner, appellant tendered a charge, which the court informed him he would consider and determine what action he would take when the trial was resumed. When the trial was taken up after dinner, as a substitute for the former charge requested, the following was requested: Even though you believe from the evidence that defendant was in no danger of suffering serious bodily injury or death at the hands of the prosecuting witness Brown, still if it reasonably appeared to defendant, viewed from his standpoint alone, that the said Brown was about to inflict upon him death or serious bodily injury, and so believing he fired the shot which struck the said Brown, and in the excitement fired two other shots without any definite aim or purpose, or in case you have a reasonable doubt thereof, then you will find the defendant not guilty." This charge was refused, and its refusal is assigned as error. In this connection it may be also well to mention that the court's charge on self-defense was objected to. Said charge is, as follows: "Upon the law of self-defense you are further instructed that, if from the acts of the said Thos. H. Brown, if any, or from his words coupled with his acts, there was created in the mind of the defendant a reasonable apprehension that he (defendant) was in danger of losing his life or of suffering serious bodily injury at the hands of the said Thos. H. Brown, then the defendant in that event had the right to defend himself from

such danger, or apparent danger, as it reasonably appeared to him at the time, viewed from his (defendant's) standpoint; and a party so unlawfully attacked is not bound to retreat in order to avoid the necessity of killing his assailant. Now, if you believe that defendant committed the assault upon the said Thos. H. Brown, as a means of self-defense, believing at the time he did so, if he did so, that he was then in danger of losing his life or of suffering serious bodily injury at the hands of the said Thos. H. Brown, then if you so believe, you will acquit the defendant." This charge was objected to on the ground that the defendant was in fact in no danger, and that if he acted in self-defense it was upon the appearances of danger; and further, if at the time of firing the first shot, it reasonably appeared to appellant, viewed from his standpoint, that prosecuting witness Brown, was about to inflict upon him (defendant) serious bodily injury or death, and defendant fired the shot which struck prosecutor, and under the excitement, without any aim or purpose, fired the other two shots as shown by the evidence, then he would not be guilty. In answer to the first proposition, as to appearances of danger, we think the charge given by the court sufficiently embraced the same, as an inspection thereof will show. The jury were told that defendant had a right to act on a reasonable apprehension that he was in danger of losing his life or of suffering serious bodily injury at the hands of Brown, and defend himself from such danger or apparent danger as it reasonably appeared to him at the time, viewed from his standpoint. Upon the other proposition, that the court should have limited the effect of the last two shots to wit: if the same were fired under excitement, without aim or purpose by appellant, and he was not justified in firing the same but was justified in firing the first shot, to acquit him, we would observe, that there was a phase of the case arising from appellant's own testimony which appears to call for such a charge. The court gave no charge covering this view of the case. An inspection of the indictment shows that the pleader alleged that appellant made an assault with intent to murder T. H. Brown, by shooting him with a pistol. Having alleged the means or the manner by which the assault was made, by a familiar rule of pleading the State was confined to the particular manner of assault as alleged, and the court in general terms appears to have confined the State's case to the first shot; that is the shot which took effect. However appellant claimed the right of self-defense as against this shot, and his testimony entitled him to a charge on this issue, which the court gave. However, as stated, the court in its charge made no mention of the two subsequent shots which failed to strike the prosecutor. As to these shots there was evidently some interval of time between them and the first shot. Appellant says he fired them without any aim or purpose, and admits he was in no danger from prosecutor when he fired these shots. The court gave a charge on aggravated assault, and if the indictment had been an ordinary one, charging assault generally, without stating the manner of the same, appellant might have been convicted of an aggravated assault on ac-

count of one or both of these two last shots. On account of the peculiar wording of the indictment, we hold that he could not be convicted of an aggravated assault for said two shots, but would be entitled to a complete acquittal as to them. Consequently, we believe that the requested charge, or a charge embracing the essential features of said requested charge, should have been given as to that phase of the case covered by the last two shots.

For the errors pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Brooks, Judge, absent.