### BILL JOHNSON v. THE STATE.

*No. 1432. Decided October 28th, 1896.*

**1. Theft of Money—Fact Case—Evidence Insufficient.**

See, the evidence stated on a trial for theft of money, which is held wholly insufficient to sustain the verdict and judgment of conviction.

**2. Circumstantial Evidence.**

In order to sustain a conviction on circumstantial evidence, the proof must establish guilt to a moral certainty, and beyond a reasonable doubt, and must exclude every reasonable hypothesis consistent with the innocence of the accused.

APPEAL from the District Court of Gonzales. Tried below before Hon. T. H. SPOONER.

Appeal from a conviction for theft of money over the value of $50; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Burgess & Hopkins*, for appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

[No brief found with the record.—Reporter.]

HENDERSON, JUDGE.—Appellant was convicted of theft of money over the value of $50, and his punishment assessed at two years in the penitentiary, and from the judgment and sentence of the lower court he prosecutes this appeal. The only question in the case is as to the sufficiency of the evidence to sustain the verdict. The record shows that the prosecutor, G. M. Head, lived at Harwood, in Gonzales County,.

which is situated some twelve miles from the city of Gonzales. On the day of the alleged theft he went from his home, at Harwood, to Gonzales, and cashed a check at the bank of Miller & Sayers for $100, said bank paying him ten $10 bills, currency of the United States of America. No further description of said bills is given. Said money was placed in an envelope, and the prosecutor, Head, placed the same in his vest pocket, and went thence to a brickyard situated in or near the town of Gonzales, and paid $20 of said money for some brick. The remaining $80 he then placed in his inside vest pocket. It was shown that the lining in his vest pocket on that side was torn, both above and below said vest pocket. Said prosecutor then went to his home at Harwood, arriving there about dark. On his arrival at home he discovered for the first time the loss of the $80. The same night, in company with one Dawson, he returned to Gonzales, in search of said money. Some time after his arrival there the defendant, Bill Johnson, was arrested on the charge of theft of this money. It was in evidence that the defendant, on the night of the day the money was lost, was seen with a considerable sum of money. One Alex Priest, testified that on that same night defendant pulled a roll of bills out of his pocket, but he did not see what kind of bills they were; only saw the roll. Defendant said he had won them; that he started with fifteen cents and won $115, but subsequently lost part of it. That defendant also had at the time a lot of silver in his pocket. One Lee Ryter, testified that defendant on that same night came into his saloon with another negro, and bought a glass of beer, and he changed a $10 bill for him; that defendant said the negroes thought he did not have any money, but that he could find more money than they could make. On the next day defendant bought a bottle of whisky from Isum Nick, who testified that he also changed for defendant a $10 bill; that at the same time he saw him with other bills, about five, which were rolled up; the outside bill was a $10 bill. Dilworth testified that defendant came into his bank that day, and asked him to give him gold for two bills; that he gave him two $5 gold pieces and one $10 gold piece for two $10 bills; that shortly after he changed the money for the defendant he heard about Head's loss of the money the night before. Sayers testified that on the same morning defendant came to his bank, and asked him to give him gold for two $10 bills, which he did. The sheriff who arrested defendant testified that when he arrested him he took from him a $20 bill and three $10 gold pieces, $50 in all; that besides that the defendant had a few pieces of silver in his pocket; that he asked him why he had changed it into gold, and he said that he wanted gold. He then asked him why he changed the gold back into paper money, and he said he did not know. He said he had the money for eight months, and then said he had been eight months in making it. This is substantially all of the testimony in the case bearing on the guilt of the appellant. As stated before, the bills that defendant procured from the bank and lost are not described further than that they were bills, United States currency. The kind is not given and no particulars or marks by

which they could be identified. Mr. Burrill says "that even the exact coincidence between a particular combination of denominations of ordinary coin contained in a purse lost, and precisely the same number of coins of the same denominations contained in a purse found on another's person, would not, of itself, amount to proof of identity," and the same holds good with regard to paper money. See, Burrill, Circ. Ev., pp. 657, 658. Generally, in cases of this character, where conviction depends on identification of the lost money found in another's possession, the money is identified by some private mark on the bills, or some peculiar torn place that has been noticed, and the cases generally show that the identity is established by the theft of some other article at the same time, as of a purse which the owner is able to identify. In this particular case the defendant was never seen with the exact number of bills that were lost. The evidence shows that he had two $10 bills changed in purchases, and four $10 bills which he changed for gold, so he was not found with the exact number of bills lost. Nor is it shown in the testimony at what point the prosecutor may have lost his eight $10 bills. The last seen of them by him was at a brickyard. How far that was from Gonzales is not stated; and he did not miss the money until he reached his home, some twelve miles away from Gonzales. Where he lost the money is not known, and it is not shown that he had the money on the road he took from the brickyard to his home; nor is it shown that the defendant was at any time seen in proximity to the road said prosecutor may have taken, along which he may have lost his money; nor was the impecuniosity of the appellant shown by any evidence. For aught that appears, he may have had that amount of money, and more. The evidence shows that he was in the ice cream business, and he claims to have made the money in that business. It is true that the appellant is shown to have made different statements about how he procured this money, but we cannot hold that this character of testimony supplies the affirmative proof which the State should have offered in order to sustain this conviction. The defendant may have been guilty of lying, but this does not make out the State's case. The circumstances may even be considered suspicious as to appellant's possession of that much money, and that the bills were of the same denomination as those lost, but a defendant cannot be convicted although the circumstances attending his possession of that much money may be suspicious. The proof, in order to sustain a conviction in a case of circumstantial evidence, must establish his guilt to a moral certainty, and beyond a reasonable doubt, and must exclude every reasonable hypothesis consistent with his innocence. The evidence in this case does not do this, and the judgment is accordingly reversed, and the cause remanded.

*Reversed and Remanded.*

HURT, Presiding Judge, absent.