RENN v. STATE.

(Court of Criminal Appeals of Texas. Nov. 22, 1911. On Motion for Rehearing, Jan. 24, 1912.)

1. CRIMINAL LAW (§ 366*)—EVIDENCE—RES GESTÆ.

Where the defense, in a prosecution for murder, was that the accused shot deceased at a time when he thought deceased was about to carry out threats previously made against accused, evidence of the statements of deceased to a witness for the state that he would get witness an application for a lodge membership, made just before he started toward a stairway and the shooting began, is admissible, as part of the res gestæ, to show the scene of the shooting just as it occurred.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 806-820, 1441-1450; Dec. Dig. § 366.*]

2. CRIMINAL LAW (§ 656*)—TRIAL—REMARKS OF COURT.

While, under Code Cr. Proc. 1895, art. 767, it is improper for the court to comment upon testimony, where, in a criminal prosecution, upon cross-examination of a witness by the accused, a question arose as to the responsiveness of the answer of the witness, and the court, during a colloquy of counsel, remarked that he thought the witness was doing the best he could, the remark was not calculated to injure the accused; and where the court immediately instructed the jury not to consider the remark it will not be ground for reversal.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1524-1533; Dec. Dig. § 656.*]

3. CRIMINAL LAW (§ 1169*)—APPEAL—HARMLESS ERROR—IMPROPER QUESTION.

While it was improper to ask a witness for the accused, in a prosecution for murder, whether he had been arrested for whipping his wife, for adultery, and for committing an aggravated assault on his wife, yet, where objections to them were promptly sustained, the witness was not present at the shooting, and was not a witness on the issue of self-defense,

and the accused was found guilty of manslaughter only, such questions will not constitute reversible error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3137-3143; Dec. Dig. § 1169.*]

4. WITNESSES (§ 393*)—IMPEACHMENT—EVIDENCE AT HABEAS CORPUS PROCEEDING.

Where, in a criminal prosecution, the accused testified in his own behalf, his evidence, given in habeas corpus proceedings, was properly admitted for purposes of impeachment.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1252-1257; Dec. Dig. § 393.*]

5. WITNESSES (§ 406*)—IMPEACHMENT—EVIDENCE TENDING TO CONTRADICT.

Where a witness, in a prosecution for murder, testified that he and another person, who had since died, heard deceased threaten the life of the accused, it was permissible, for purposes of impeachment, to show that the dead person was not in the community, but was in a distant town, at the time the threat was said to have been made.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1276-1279; Dec. Dig. § 406.*]

6. WITNESSES (§ 406*)—IMPEACHMENT—EVIDENCE TENDING TO CONTRADICT.

A witness, in a prosecution for murder, who testified that, on the night of the homicide, the deceased came into his shop, and stated that he was going to kill the accused, may be impeached by the testimony of another person, who was in the shop, that the remarks were uttered by the accused, rather than by the deceased.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1276-1279; Dec. Dig. § 406.*]

7. WITNESSES (§ 379*)—IMPEACHMENT—NATURE OF INCONSISTENT STATEMENT.

Where a witness, in a prosecution for murder, exhibited bias on behalf of the accused, and there was other testimony tending to impeach his statements, evidence of his remark, upon hearing shots on the night of the homicide, that he guessed that was the accused now, was proper, where its effect was properly limited by instruction.

[Ed. Note.—For other cases, see Witnesses, Dec. Dig. § 379.*]

8. CRIMINAL LAW (§ 1122*) — TRIAL — REMARKS OF COUNSEL.

Where, though a bill of exceptions shows that an accused, in a prosecution for murder, and his wife were not living together at the time of the trial, it does not show, either that she would not have testified truthfully, or that she would not testify at all, upon being sought as a witness by the accused, or that she was living with persons unfriendly to him, there is nothing shown which would render improper the refusal of an instruction, directing the jury not to consider remarks of counsel for the state, commenting on the failure of the accused to put his wife on the stand.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2940-2945; Dec. Dig. § 1122.*]

9. CRIMINAL LAW (§ 1137*)—TRIAL—WAIVER OF ERROR IN INSTRUCTION.

Where accused, in a prosecution for murder, requested a charge on the right of self-defense, he could not complain of the giving of a charge conveying the same thought in practically the same words to the jury.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3007-3010; Dec. Dig. § 1137.*]

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

10. HOMICIDE (§ 118*)—SELF-DEFENSE—DUTY TO RETREAT.

One who is unlawfully attacked need not retreat to avoid the necessity of killing his assailant, but may stand his ground, and even advance on his adversary, until the danger or apparent danger is past, and may repel the unlawful attack with any force which appears reasonably necessary; but when the danger appears to cease the right to attack ceases.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 168–171; Dec. Dig. § 118.*]

On Motion for Rehearing.

11. WITNESSES (§ 388*)—IMPEACHMENT.

In a prosecution for murder, a witness was properly asked, as a basis for impeachment, whether, on the night of the homicide, he stated to a certain person that the accused had told him that evening that he was going to kill the deceased that night.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1233–1242; Dec. Dig. § 388.*]

12. WITNESSES (§ 374*)—IMPEACHMENT—EVIDENCE—BIAS.

Statements of a witness showing bias or partiality for the person who calls him are proper to be considered by the jury on the value of his testimony, and may be developed by cross-examination or by other witnesses, where the witness denies the facts showing bias, so that, in a prosecution for murder, evidence that when the accused made a threat against the life of deceased a witness, called on behalf of the accused, replied, "You can have my last dollar," was admissible to show bias, and affect the weight of the testimony of such witness.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1201, 1202; Dec. Dig. § 374.*]

Davidson, P. J., dissenting.

Appeal from District Court, Tarrant County; Jas. W. Swayne, Judge.

Ellis Renn was convicted of manslaughter, and he appeals. Affirmed

Mike E. Smith and Parker & Parker, for appellant. C. E. Lane, Asst. Atty. Gen., for the State.

HARPER, J. Appellant was indicted, charged with the murder of Sebastian Collins. He was convicted of manslaughter. from which judgment he has appealed.

It appears from the record the deceased was intimate with the wife of defendant, whether criminally so or not is not disclosed by the record, but the intimacy had caused the separation of defendant and his wife; defendant believing the relations were improper. For some time before the killing, the defendant and deceased were on unfriendly terms. Defendant and two or three witnesses testify that deceased had made threats, and defendant testifies that he thought deceased was attempting to carry the threats into execution when he shot and killed him. The witnesses for the state testify there was to be a lodge meeting at the Temple building that night. Deceased said to a witness he thought he was going to apply for membership, when witness replied he had no application. Deceased remarked he would get an application, and started towards the stairway, when the shooting began. Deceased had no weapon, but had some papers in his hand.

[1] In his first bill of exceptions, appellant objects to this witness being permitted to detail this conversation. with deceased, as it was not shown that defendant heard it. The witness says, in answer to the question: "How long before he made that remark, that 'if that was all he would go upstairs and get an application blank,' before the shooting began? 'Just the time it would take him to walk that distance from where he was standing; it was less than half minute.'" We think the statement was admissible as res gestæ. The scene as it occurred should be presented to the jury as near as possible, both from the standpoint of the state and the defendant, that the jury might be enabled to draw proper deductions when all the testimony has been adduced. Merritt v. State, 39 Tex. Cr. R. 76, 45 S. W. 21; Greenl. on Ev. § 198; Underhill on Ev. § 93.

[2] While the witness James Guinn was being cross-examined by appellant's counsel, in answer to the question, "You had known for five months of the difference between defendant and deceased?" the witness answered: "I won't say a difference between them. I knew that Renn was mistreating his wife, and she told it; and that night he and his wife was out to my house, and I found out that there was a difference, and that Renn was accusing Collins of his wife"—to which answer appellant objected, because it was not responsive to the question. The court excluded the answer, when appellant's counsel again questioned witness about how long he had known of the difference between defendant and deceased, when the witness said: "I cannot answer that without telling him—" when he was stopped by the court. The state's counsel insisted that the witness should be permitted to answer the question in his own way, while defendant insisted that he only wanted a direct answer, the court remarking during the colloquy, "I think the witness is trying to do the best he can," to which remark the defendant objected and reserved a bill of exception, when the court instructed the jury: "You will not consider that remark of the court. It was probably improper for the court to say that, but the idea of the court was different from what Judge Parker thinks it was. You need not consider any remark whatever made by the court with reference to this question." While, under article 767 of the Code of Criminal Procedure, it is improper for the court to comment upon testimony, yet this court has frequently held that such remark must be calculated to injure the defendant, to be ground for reversal of the case. McGee v. State, 37 Tex. Cr. R. 668, 40 S. W. 967; Clem-

mons v. State, 29 Tex. Cr. R. 279, 45 S. W. 911, 73 Am. St. Rep. 923; Rodriguez v. State, 23 Tex. App. 507, 5 S. W. 255. The remark we do not think resulted in any injury to the appellant, and especially so when they were at once instructed not to consider it.

[3] State's counsel acted improperly in asking one of the defendant's witnesses if he had not been arrested for whipping his wife, if he had not been arrested for adultery, and if he had not been arrested for committing an aggravated assault on his wife. The court sustained the objections of defendant to each of these questions, and we are at a loss to know why counsel for the state will insist on asking questions of this character. However, as the court promptly sustained the objections, the question arises, Was it such error as would be hurtful to defendant? for, as said by Judge Davidson, in Fitzpatrick v. State, 37 Tex. Cr. R. 30, 38 S. W. 808 (in which case the defendant was compelled to answer that he had been convicted of an assault and fined) "notwithstanding this impeaching testimony should not have been admitted, was it of a character to injure or impair the rights of appellant?"—and under the record in that case it was held harmless error. It is not very slight error that should call for a reversal of a case; it is only such errors as might and probably did work injury to the defendant. This witness did not claim to have seen the difficulty, and was not a witness to defendant's plea of self-defense, and, inasmuch as the defendant was only found guilty of manslaughter, we do not think the error was such that the case should be reversed. However, such practice should not be indulged in, and if from the whole record, even though the questions are not required to be answered, it appears that the jury was probably influenced by such improper conduct, we would reverse and remand for another trial.

[4] The appellant having taken the stand and testified in his own behalf, there was no error in permitting the state to introduce his evidence at the habeas corpus trial in rebuttal, for the purpose of impeachment. Collins v. State, 39 Tex. Cr. R. 441, 46 S. W. 933; Preston v. State, 41 Tex. Cr. R. 308, 53 S. W. 127, 881.

Bills of exception Nos. 5, 6, 7, 8, 9, and 11 all relate to the impeachment of the defendant's witness Will Vaughn. Vaughn testified for the defendant that deceased, Collins, actually carried a pistol, and often left it at his barber shop, and had left it there the morning of the day of the killing; that late in the afternoon deceased came to the shop and got the pistol. Before leaving with it, he had asked witness for oil to clean his pistol. He let him have it and deceased took the pistol to pieces and cleaned and oiled it, when the witness says the following conversation took place: "During the time that he was oiling the gun, I asked him his object for oiling up. 'Old boy, you kind of fixing

up a little, aren't you?' and he says: 'Yes; I am expecting to use it.' I says, 'You think you will go out shooting at target practice?' He says: 'No; I don't.' He says, 'Renn has said something to me I don't like, and I am going to whip him to-night, or kill him.' I says: 'Collins, the very idea you talk that way! I am ashamed of you, knowing how close you are, even to have to talk like you would even do a thing like that. Would you infringe on my feelings, me a friend like I am?' He says: 'That doesn't matter. My mind is ready composed, and I will not be deposed.'" The witness testified that Ruby Morrow was working for him, and was present when this conversation took place with deceased; that he told defendant, Renn, about this conversation the same evening, and only a short time before the shooting. On cross-examination, he was asked if he had testified that the name of the girl who was there was Ruby Morrow, and he answered: "Yes; I said that was the girl"—but he added that he had six or eight girls there during the year. He was also asked if, on the night of the killing and a short time thereafter, he (witness) had not told Nick Lightfoot that "Renn had killed Collins, and that Renn [defendant] was in his barber shop that evening, and had told him [Vaughn] that he was going to kill Collins [deceased] that night," which statement witness denied. He was also asked if, subsequent to this time, in the presence of Mr. Wilkinson and Ed Loving, he did not deny making the statement to Lightfoot, and at said time said "he did not know anything about the case at all," which statement was denied by the witness. He was also asked, on cross-examination, if the following conversation did not take place between witness and Renn, in the presence of Adam Sims: If a short time before the killing Ellis Renn (defendant) did not walk into his (Vaughn's) barber shop, and say: "I have made up my mind to do it. I have just got to do it"—and witness Vaughn replied to Renn: "Well, you can have my last dollar." All of which was denied by the witness. Again, on cross-examination, he was asked if, in the presence of the said witness, he did remark when the shooting was heard, "I guess that is Renn now."

In rebuttal, the state was permitted to prove by E. H. Morrow that he was the father of Ruby Morrow; that she was dead, but at the time Renn killed Collins she was not in Vaughn's shop in Ft. Worth, but was in McGregor, Tex., teaching music; and proved by Nick Lightfoot that Vaughn, on the night of the killing, had told him that "Renn had killed Collins, and Renn had told him (Vaughn) that he was going to kill Collins that night;" and by Sims that he was present and heard Renn (defendant) tell witness Vaughn: "I have made up my mind to do it. I have just got to do it"—and Vaughn said to him, "Well, you can have my last dollar." and at the time of the shooting remarked,

"I guess that is Renn now;" and by the witness Lightfoot that when he asked Vaughn, subsequently, in the presence of Wilkinson and others, if he had not told Lightfoot, on the night of the killing, Renn had said to Vaughn he was going to kill Collins he denied knowing anything about the case at all.

[5, 6] All of this rebuttal testimony was objected to and proper bills of exception reserved. To properly understand the ruling of the court, it must be remembered, as hereinbefore stated, that the witness Vaughn had testified that deceased, Collins, had come and got his pistol just before the killing, and said he was going to kill defendant, Renn, and he had so informed Renn. Witness Sims testified in rebuttal that he worked in the shop with Vaughn, and knew Collins, the deceased; that deceased never came in the Vaughn shop, and had not been in there that day, and had left no pistol there, and did not come in there and get a pistol, but the one who did come in was defendant, Renn, who said: "I have made up my mind to do it. I have got to do it." Certainly the statement attributed to defendant was admissible. There was a sharp conflict in the testimony between witness Vaughn and witness Sims on who it was that came in the shop and made the remarks attributed to defendant by Sims, and to deceased by Vaughn. When witness Vaughn said a dead person had heard deceased make the remark, it was permissible to show she was not in Ft. Worth, but in a distant town. It was permissible, under all the authorities, to show that a witness for a defendant, for the purpose of impeachment of the witness, on the night of the killing, said defendant had told him he was going to kill deceased, when on the trial he says it was deceased who told him he was going to kill defendant.

[7] As to the remark, "I guess that is Renn now," if it was an isolated statement, it might not, perhaps, be admissible; but, when taken in connection with all the testimony, the bias of the witness in favor of defendant we think it properly admitted; at least, no such error is presented as should cause a reversal of the case, when the record shows that defendant was permitted to introduce impeaching testimony as to the witness Sims. In addition, the court instructed the jury that they could not consider this statement of Sims, or the testimony of Morrow, Loving, and Lightfoot, except in so far as it might affect, if they believed it did affect, the credibility of the witness Vaughn; and further instructed them to consider it for no other purpose. McAnear v. State, 43 Tex. Cr. R. 518, 67 S. W. 117; Ryan v. State, 49 S. W. 599; Bean v. State, 51 S. W. 946; Webb v. State, 55 S. W. 493; Landers v. State, 63 S. W. 557; Shaffer v. State, 65 S. W. 1072; Locklin v. State, 75 S. W. 305; Jenkins v. State, 45 Tex. Cr. R. 173, 75 S. W. 312. In Am. & Eng. Ency. of Law, vol. 30, p. 1102, the rule is stated to be: "Disparaging evidence of matters otherwise collateral may be received, when it tends to show the temper, disposition, or conduct of the witness in relation to the cause or parties; and, not only is this evidence admissible on cross-examination of the witness, but other witnesses may be questioned by the opposite party in relation thereto"—citing authorities.

[8] In another bill of exceptions, appellant complains that the court excluded the petition for divorce filed by the wife of appellant. The bill is incomplete, in that the petition, nor any allegation in the petition, is copied in the bill, but, where the bill alleges, "said allegation being as follows," is followed by blank lines. In addition, his wife was living at the time this case was tried, and, in this connection, the court did not err in refusing to give the following special instruction: "You are instructed that the argument of O. S. Lattimore closing for the state, to the effect that defendant did not put his wife on the witness stand, that the defendant had the right to put her on the stand, but the state could not, and yet the defendant failed to put her on the stand to corroborate him in his defense, was improper, and you will not consider the same for any purpose whatever." It is true, the bill shows that appellant and his wife were not living together at the time of the trial, but in the bill there is no statement or allegation that would show she would not testify truthfully, or that appellant had sought her as a witness, and she had declined to talk with him, or that she was living with those unfriendly to appellant. Eggleston v. State, 59 Tex. Cr. R. 542, 128 S. W. 1110.

[9] In the eleventh ground of his motion for a new trial, appellant complains of the following paragraph of the court's charge: "In this connection, you are instructed that one who is unlawfully attacked is not bound to retreat, in order to avoid the necessity of killing his assailant, but has the right to stand his ground, and even to advance on his adversary, and continue to act in self-defense until the danger or apparent danger is past, and to repel the unlawful attack of his assailant with whatever force may reasonably appear to him at the time to be necessary; but when it appears to defendant that such danger or apparent danger, if any, ceases, then such right ceases."

Appellant says: "(1) It is not applied to nor limited by the facts in evidence in this case. (2) It is but the statement of an abstract principle, instead of being put in a concrete form, and explaining the defendant's rights in this particular case. (3) This charge tells the jury that the defendant has the right to stand his ground, and even to advance on his adversary. (4) Said charge tells the jury that defendant has a right to continue to act in his self-defense, until the danger or apparent danger is past."

In his nineteenth ground, appellant complains of the failure of the court to give the following special charge requested by defendant: "You are further charged, at the request of defendant, that a person unlawfully assailed, not only need not retreat to avoid the necessity of killing his adversary, but has the right to stand his ground, and to even pursue his adversary, until he finds himself out of danger, or apparent danger."

It will be seen that the court could not have erred as complained of in both the eleventh and nineteenth grounds of the motion. The court gave in the main charge, in nearly the exact language, the law as requested in the special charge; and, while we think there was no error in the charge as given, yet, if error there be, the appellant invited the court to give in charge this principle of law, and he cannot now be heard to complain.

In this case the jury by their verdict find all the issues of fact in favor of defendant, except that it 'reasonably appeared to him his life was in danger. The state insisted that it was a case of murder; while it was defendant's contention that it could not be more than manslaughter, by reason of the circumstances antecedent to the killing, threats, etc. The appellant testified to conduct on the part of deceased which, he says, led him to believe that deceased was then and there about to carry the threats into execution. The witnesses for the state, and some of the witnesses for appellant, testify deceased had no weapon. The eyewitnesses testify to no conduct on the part of deceased which would justify appellant in killing Collins.

[10] The issues of the right to defend against danger as it appeared to appellant, viewed from his standpoint, was fairly and correctly given in the charge, and upon this phase of the case the record presents no error; and, as the jury found the other issues in favor of appellant, no error harmful to appellant was committed in the trial of the case.

The judgment is affirmed.

DAVIDSON, P. J. (dissenting). The testimony mentioned in the bills of exception ought to be excluded under the Drake Case, 29 Tex. App. 265, 15 S. W. 725, and that line of cases, including the late case of Hickey v. State, 138 S. W. 1051.

### On Motion for Rehearing.

HARPER, J. This case was affirmed at a former day of this term, and appellant has filed a brief and an able argument, in which he strenuously insists that the court erred, and that the case should be reversed.

We will first discuss the question presented in appellant's argument, as he doubtless deemed them of most importance. As shown in the original opinion, while appellant's witness Will Vaughn was on the stand, the prosecuting attorney asked some improper questions, the first of which was how many times the witness had been arrested for whipping his wife; the second, how many times the witness had been arrested for adultery; and the third, had the witness ever been arrested for an aggravated assault on his wife. Appellant objected to these questions, and the court promptly sustained the objections made. This witness had testified, in behalf of defendant, that the evening of the homiside, deceased had come to his barber shop, oiled and cleaned his pistol, and told him he was going to whip or kill appellant that night; that he informed appellant of his statement or threat the same evening. The witness did not claim to have seen the shooting, or any part of it, nor any of the immediate acts leading up to it. The questions were not such as could or would prejudice the jury against defendant; but appellant insists that they were such as would cause the jury to believe that the witness was guilty of the offenses named, or appellant would not have objected, and thus have a tendency to impair the effect of his testimony. We do not think this the necessary or natural result of such questions. If the court sustained the objections, as he did in this instance, would not appellant's counsel insist before the jury, and would not the jury naturally conclude, that if the state, by improper and illegal means, was seeking to impair the force of the witness' testimony that the testimony was cogent and forceful, and the state could not legally impair its effect, and for this reason consideration would be given it? Where the trial court promptly sustains the objections when improper questions are asked, it has never been the policy of this court to reverse the case, unless the conduct of the prosecuting attorney was such as to render it inevitable that the mere asking of the question was calculated to injure the defendant, and in this instance, the questions being such that, while, if the witness admitted being guilty of the offenses inquired about, they might injure his standing in the community, they would not necessarily imply that his testimony was unworthy of credit. In the case of McCorquodale v. State, 54 Tex. Cr. R. 357, 98 S. W. 883, the prosecuting attorney asked a witness for the defendant, "Now, is it not a fact that defendant is an old poker player?" Objection was made and sustained, and the court, speaking through Judge Davidson, held there was no error, as there was no testimony admitted before the jury. See, also, Howard v. State, 37 Tex. Cr. R. 498, 36 S. W. 475, 66 Am. St. Rep. 812; Alexander v. State, 21 Tex. App. 406, 17 S. W. 139, 57 Am. Rep. 617; Williams v. State, 30 Tex. App. 367, 17 S. W. 408; Terrell v. State, 25 S. W. 769; Harding v. State, 60 Tex. App. 327, 131 S. W. 1092; Doss v. State, 50 Tex. Cr. R. 48, 95 S. W. 1040; Powell v. State, 50 Tex. Cr. R. 592,

99 S. W. 1008; Harris v. State, 49 Tex. Cr. R. 338, 94 S. W. 228; Leonard v. State, 56 Tex. Cr. R. 307, 120 S. W. 183; Henderson v. State, 49 Tex. Cr. R. 269, 91 S. W. 569. Asking the questions proved no fact; and we think it would be an unwarranted assumption on our part to assume that when the court promptly sustained the objection the jury would at once conclude that the witness was guilty of the offenses named; and that it unduly influenced them. There are cases where we have reversed if questions *probably* injured.

The next criticism is that this court erred in the statement: "There was a sharp conflict in the testimony between the witness Vaughn and witness Sims on who it was that came in the shop and made the remarks attributed to defendant by Sims, and to deceased by Vaughn." We might have been inaccurate in the use of the word "statement," instead of the word "threats," but not in the conclusion that there was a sharp conflict in their testimony. Vaughn testified that deceased came into his shop, cleaned his pistol, and said he was going to whip or kill defendant. Sims says deceased did not come into the shop that day, and had not been in it for several days; and Sims further says defendant did come in, and said: "I am going to do it. I have just got to do it." When Vaughn replied, "Well, you can have my last dollar." Vaughn denied that appellant made any such remark. So it is seen that Vaughn testifies to a threat made by deceased, which Sims says was not made; and Sims testifies to a threat made by appellant, which Vaughn says was not made. Vaughn says deceased was in the shop; Sims says he was not in there that day; and if there is not a direct conflict in the testimony of the two men we cannot understand the statement of facts. And this is followed in appellant's argument by a criticism of that part of the opinion admitting the testimony of the witness Lightfoot, who testified that shortly after appellant had shot and killed deceased he met the witness Vaughn, who told him that appellant, Renn, had killed Collins, and appellant had told him (Vaughn) he was going to do it. The witness had testified on the trial to a threat made by deceased, and denied that appellant had made any threat in his presence, when he was asked, if, shortly after the killing, he had not made the above statement to Lightfoot, which he denied. Lightfoot then testified that he had so stated to him. That this is material cannot be denied. The state's witness Sims was testifying that appellant was in the shop and making threats against deceased. The defendant's witness Vaughn was testifying that deceased, Collins, was in the shop making threats towards appellant, and appellant had made no threats. On the night of the homicide, Lightfoot says that Vaughn told him that appellant had killed deceased, Collins, and had told him he (appellant) was going to kill deceased. As to the reason why the witness could not be thus impeached, we fail to understand. In the case of Drake v. State, 29 Tex. App. 272, 15 S. W. 728, which has been termed a leading case, this court says: "If, in laying the predicate to impeach the witness Drake, Jr., he had been asked, 'Did you not state, in the presence of Hugo Robinson, Street Bacon, Bob Fleming, and Todd Ziegler, on the evening or night of August 27, 1887, the day that Guinn was shot by your father, and at or near the store of Chas. Rast, in Waco, that your father told you on that morning before the homicide that he was going to kill Guinn?' the question would have been proper, would have been as to a fact relevent and material to the main issue—a fact with respect to which the witness could be impeached by proving that he did make such statement."

[11] In this case, the question asked was, "Did you state, in the presence and to Nick Lightfoot, that appellant had told you that evening he was going to kill Collins that night?" This was denied by the witness Vaughn. Under the authority of the above case, and all the decisions of this court rendered since that date, it is permissible to thus impeach a witness. Boatright v. State, 42 Tex. Cr. R. 443, 60 S. W. 760; Adams v. State, 52 Tex. Cr. R. 13, 105 S. W. 197; Sanders v. State, 54 Tex. Cr. R. 111, 112 Pac. 68, 22 L. R. A. (N. S.) 243; Deneaner v. State, 58 Tex. Cr. R. 624, 127 S. W. 201, and cases cited.

This disposes of all the questions in appellant's brief. However, in the motion for a rehearing several other questions are assigned, but no authorities are cited sustaining his contention; the next ground being that the court erred in remarking: "I think the witness is doing the best he can." This question is treated fully in the original opinion, but for additional authorities see Mitchell v. State, 51 Tex. Cr. R. 71, 100 S. W. 930; Cole v. State, 51 Tex. Cr. R. 89, 101 S. W. 218; Waggoner v. State, 98 S. W. 257.

[12] All the questions raised in the motion for a rehearing having been discussed in the original opinion, we would not further discuss them but for the notation made at the time by our Presiding Judge, wherein he says: "The testimony mentioned in the bills of exception ought to be excluded under the Drake Case, 29 Tex. App. 265 [15 S. W. 725], and that line of cases, including the late case of Hickey v. State, 138 S. W. 1051." This relates to the testimony offered to impeach the witness Vaughn. As shown above, the Drake Case is authority for the admission of this testimony of the witness Lightfoot; it holding that such testimony is admissible to impeach a witness in regard to a statement of the character testified to by the witness. We also think the Drake Case is authority for admitting the statement: "Well, you can have my last dollar," and, "That is Renn now." In the motion for rehearing in

the Drake Case, 29 Tex. App. 277, 15 S. W. 730, it is said: "A statement of an opinion merely cannot be used to impeach a witness, except when opinion is an issue, or where the opinion stated goes to *show bias of the witness*." Whart. Crim. Law, § 482; 1 Greenl. § 449; Holmes v. Anderson, 18 Barb. (N. Y.) 420. Now, what does this record show? The witness Vaughn testified that deceased came to his shop, cleaned his pistol, and told him that he was going to whip or kill appellant that night; and that a short time before the killing he had informed appellant of these facts and this threat. The witness Sims says he was in the shop, and no such conversation took place; in fact, deceased did not come in the shop that day, but instead appellant made a threat in regard to deceased. Vaughn, as a witness, was friendly in his testimony to appellant, and testified to facts that would aid appellant in his contention that he, at the time of the shooting, had a reasonable apprehension of danger and grounds for such apprehension. Is the state bound by the testimony of the witness Vaughn, or can it impeach him and show its falsity, and show it to be the testimony of one who, by his prior acts and conduct, is a person biased in his feelings in the case? In the Drake Case, it is held to be admissible, if it goes to show the bias of the witness. In the Hickey Case, it is said, "if the witness by her testimony shows bias, prejudice, or hostility," she can be cross-examined about such matters. Nothing more definite could be shown that would demonstrate to the jury the bias of the witness Vaughn than this conversation, in which it is alleged that appellant told Vaughn: "I have made up my mind to do it. I have just got to do it"— when Vaughn replied to him, "Well, you can have my last dollar." And shortly thereafter, when he heard the shots, he remarked: "I guess that is Renn now." It is true Vaughn denies all this; but another witness is as positive that it did occur, and when this is followed on the trial by the witness Vaughn testifying to preparation and a threat on the part of deceased, which a witness who stayed in the same shop says did not occur, the jury is entitled to have this light in passing on the weight of the testimony. We are not passing on which is telling the truth; that is a question for the jury, and in doing so they are entitled to have all the information that will enable them to properly do so, and which tends to show the friendship and bias of Vaughn for appellant, or the state's witness for deceased, in order to give proper weight to the testimony of the state's witness and the defendant's witness.

Mr. Wharton, in his excellent work on the Law of Evidence, lays down the rule (section 408): "One of the advantages of cross-examination, as we shall have occasion to see more fully hereafter, is that it enables the bias of a witness to be disclosed, and this is peculiarly important where interest is no longer a ground for disqualification. We should at the same time remember, however, that pecuniary interest in a case is by no means the only influence by which bias is produced. Relationship, party sympathy, personal affection, work upon the perceptive powers of witnesses more subtly and more effectively, in the great body of cases, than does pecuniary interest; and it is by no means creditable to the English common law that it regarded the less honorable influence as so powerful that the interest of a single penny would incapacitate, while it so little appreciated the force of the nobler affections that in only one case—that of marital relationship—did it recognize their existence. Now, however, that all disqualifications are removed, and that proof of interest goes only to credibility, influences of all kinds are equally objects of consideration, in determining how far credibility exists. Credibility, therefore, so far as it depends upon the capacity for accurate narration, is now relieved from the obstructions produced by the old rules, and is determinable by the ordinary laws of free logical criticism. The question now is, not whether a witness is to be received, but how far he is to be believed. Interest and party sympathy may be always shown in order to discredit a witness, and the same observation may be made as to near relationship." And in section 545 he says the witness may be required to explain whatever would show bias on his part, citing authorities from almost every state in the Union.

In the American and English Ency. of Law, vol. 30, p. 1088, the rule is laid down: "The fact that a witness manifests a bias or partiality for the party who calls him is a proper matter for the consideration of the jury in estimating the value of the testimony, and it is a general rule that on cross-examination any fact may be elicited which tends to show such bias or partiality. If the witness denies the facts showing bias, the cross-examining party may call other witnesses to contradict him." This is the rule adopted in Texas, so far as we have been able to ascertain from the reports. Magruder v. State, 35 Tex. Cr. R. 214, 33 S. W. 233; Daffin v. State, 11 Tex. App. 76; Ashlock v. State, 16 Tex. App. 13; Crist v. State, 21 Tex. App. 361, 17 S. W. 260; Jenkins v. State, 34 Tex. Cr. R. 201, 29 S. W. 1078; Sims v. State, 38 Tex. Cr. R. 637, 44 S. W. 522; Clark v. State, 43 S. W. 522; Webb v. State, 58 S. W. 82; Pace v. State, 79 S. W. 531. Judge Davidson, in the cases of Earle v. State 142 S. W. 1181, and Pope v. State, 143 S. W. 611, decided at this term of court, discusses at length this question, and those cases are here referred to as showing the admissibility of this character of evidence to show the feeling and bias of the witness. In those cases he cites many authorities, and we do not deem it necessary to again cite them,

but refer to them and adopt the views there expressed by him.

The statement that the witness Vaughn said appellant had told him he was going to kill deceased is admissible, under all the authorities, as is also the statement of the witness Sims, that he heard appellant make a threat, and we think it equally clear that when appellant made this threat that the witness Vaughn replied, "You can have my last dollar," and the other statements attributed to him were admissible as showing bias and friendly regard for appellant, as going to the weight of his testimony. All of this testimony was properly limited by the court in his charge to the purposes for which it was introduced, and was admissible, and no such matters are presented as should cause a reversal of the case. If the statement, "You can have my last dollar," and, "That is Renn now," were not admissible for the purposes of impeaching and affecting the credibility of the witness Vaughn, as showing his bias (which we think they were), yet said statements could not and did not tend to show that appellant was or was not guilty of any offense.

The motion for rehearing is overruled.

DAVIDSON, P. J. (dissenting). On a former day of this term, this case was affirmed by a majority opinion. I then dissented, but did not write, trusting that my Brethren would see the error of their way, and upon motion for rehearing reverse the judgment, to the end that defendant might have a legal trial; but they have written an opinion on the rehearing overruling that motion. I do not purpose to go into a detailed statement of the case or the questions involved, but will state a few reasons why this judgment is erroneously affirmed.

While the witness Vaughn was upon the stand, he was asked, first, if he had not been arrested for beating his wife; second, how many times he had been arrested for adultery; and, third, if he had not been arrested for aggravated assault upon his wife, etc. As these questions were propounded, objection was interposed and sustained. My Brethren hold there was no error in this, and cite authorities to sustain that conclusion. As a general rule, I agree with them that there would be no serious injury, where the questions were not answered. There may be and are exceptions to this general statement. We have reversed judgments because of the unauthorized manner of the prosecutions asking illegitimate questions, in order to discredit a witness before the jury, even when the questions were not answered. It is readily conceivable how by a continuous course of conduct of this sort a defendant's case might be seriously injured. We held this character of conduct reversible in the recent case of Sweeney v. State, 145 S. W. ——.[1] I make these observations in passing as a caution to prosecutions not to indulge in this character of questioning, and the trial courts, if attorneys insist upon following up that line of conduct, to exercise proper discipline in preventing it. There is no occasion for such things, and it only complicates cases unnecessarily, and often requires reversals of judgments, when otherwise it would not be necessary. I desire to again impress upon trial courts and state's counsel that a case should be so tried that when the verdict has been reached the record will be so free of taint and sufficient to prevent a reversal upon appeal. In other words, a case should be tried, so that when the verdict has been rendered and judgment entered it will be a legal conclusion of the litigation. More care and circumspection in the trial of cases might result in fewer appeals, and certainly in fewer reversals. Under our statutes and Constitution, a party accused of crime is entitled to a fair trial. He is entitled to a legal trial. Under the rule prescribed by the Legislature, I do not understand why, in the trial courts, these statutory provisions are sought to be evaded on some technicality. I will readily agree with my Brethren that it is not every slight error which calls for a reversal. It is only such error as might probably work injury to the accused. My Brethren, in their opinion, recognize this rule as correct. So it would necessarily follow, if the error probably did injure the accused, he would not be asking too much of this court to reverse the conviction. It is a difficulty, not easily solved, for an appellate court to say that palpable violations of law are harmless error. I call attention to the following cases: Tijerina v. State, 45 Tex. Cr. R. 182, 74 S. W. 913; Sweeney v. State, 145 S. W. ——.[1] recently decided; Campbell v. State, 138 S. W. 609; Wyatt v. State, 58 Tex. Cr. R. 115, 124 S. W. 929, 137 Am. St. Rep. 926; Baines v. State, 43 Tex. Cr. R. 490, 66 S. W. 847.

2. There are quite a number of bills of exceptions, presenting questions for revision, some of which clearly show error. Bill No. 6 recites that Vaughn, testifying in behalf of the defendant, stated, in substance, that deceased came to his barber shop on the evening of the homicide, got his pistol, which he had left there that morning, oiled and cleaned it, and said that he intended "to whip Renn or kill him that night." Vaughn, later the same evening, saw Renn at his barber shop, and informed him what deceased had said. He also testified that he was at his shop, several blocks away, at the time the shooting occurred. Upon cross-examination, Vaughn was asked by the prosecution if he did not see the witness Nick Lightfoot, a short time after the shooting, on the night of the homicide, and have a talk with him and other persons, in which he (Vaughn) said that Renn had killed deceased Collins; and that Renn was in his barber shop that evening, and told him that he was going to kill Collins that night, which

[1] Rehearing pending.

question was answered by Vaughn in the negative. Whereupon Lightfoot was introduced by the state, and, over appellant's objection, stated, in substance, that he saw and had a conversation with Vaughn on the night of the homicide, after the shooting occurred, on the Rock Island Railroad east of the place where deceased was killed, and that Watson was with him; that in the conversation Vaughn, at that time and place, said to them that Renn had killed Collins; and that Renn was in his barber shop that evening, and told him (Vaughn) that he was going to kill Collins that night. Quite a number of objections are urged to this testimony, that it was not pertinent to any issue in the case, not admissible for any purpose, was immaterial to any issue in the case, was an effort to impeach the witness Vaughn on an immaterial matter, was hearsay, and an effort to impeach Vaughn upon his failure to give testimony favorable to the state. My Brethren hold that this was admissible. I do not think so under any of the authorities. The state certainly had no legal right, upon the examination of this witness, to try to introduce before the jury the hearsay statements of Vaughn, if he had made them, to contradict him, in order to get the threat before the jury. Vaughn on this matter was the state's witness. It was new matter, and it will be noted that he did not ask Vaughn if Renn had made the statement that he intended to kill Collins, but asked him if he did not have a conversation with the witness on the railroad, at night, in which he told him that Renn had said he intended to kill Collins. Here was where the court made the witness Vaughan testify for the state on new matter and with which it was not sought or intended to connect Renn. It was out of the presence of Renn, and was simply a failure on the part of the state to prove a threat or a statement, after an illegitimate effort to do so. The failure to testify, as indicated by the question, could in no manner have injured the state. It was simply a failure to make proof in an attempt to impeach. It is a well-settled rule that it is error to permit the state to impeach her own witness, where such witness merely fails to remember, or refuses to testify, or fails to make out the state's case. A mere failure to make proof is no ground for impeaching a witness. Bennett v. State, 24 Tex. App. 77, 5 S. W. 527, 5 Am. St. Rep. 875; Dunagain v. State, 38 Tex. Cr. R. 614, 44 S. W. 148; Smith v. State, 45 Tex. Cr. R. 520, 78 S. W. 519; Scott v. State, 52 Tex. Cr. R. 165, 105 S. W. 796; Wells v. State, 43 Tex. Cr. R. 451, 67 S. W. 1020; Owens v. State, 46 Tex. Cr. R. 16, 79 S. W. 575; Hanna v. State, 46 Tex. Cr. R. 8, 79 S. W. 544; Ware v. State, 49 Tex. Cr. R. 415, 92 S. W. 1093; Skeen v. State, 51 Tex. Cr. R. 40, 100 S. W. 770; Quinn v. State, 51 Tex. Cr. R. 156, 101 S. W. 248; Shackelford v. State, 27 S. W. 8; Finley v. State, 47 S. W. 1015; Knight v. State, 65 S.

W. 89; Gibson v. State, 29 S. W. 471; Kessinger v. State, 71 S. W. 597; Erwin v. State, 32 Tex. Cr. R. 519, 24 S. W. 904; Williford v. State, 36 Tex. Cr. R. 425, 37 S. W. 761; Ozark v. State, 51 Tex. Cr. R. 108, 100 S. W. 927; Johnson v. State, 36 Tex. Cr. R. 396, 37 S. W. 424; Largin v. State, 37 Tex. Cr. R. 574, 40 S. W. 280; Thomas v. State, 14 Tex. App. 72; Dawson v. State, 74 S. W. 912; Goss v. State, 57 Tex. Cr. R. 557, 124 S. W. 107.

It is also the rule in Texas if a witness be cross-examined as to new matter he becomes the witness of the party injecting the new matter, and if there is a mere failure to make the proof the party is not entitled to impeach the witness, as to such new matter, by proof of his statements to another witness, and thus get hearsay testimony before the jury. Vaden v. State, 25 S. W. 777.

Again, it has been held in a great number of authorities, if the defendant's witness is cross-examined as to new matter, he becomes the state's witness in regard to that matter; and if the state fails to elicit the desired answer, it is the mere failure to make proof, and it is error to permit the state to impeach the witness, as to such new matter, by proving statements by other witnesses, and in this manner get hearsay testimony before the jury. Woodward v. State, 42 Tex. Cr. R. 205, 58 S. W. 135; Owens v. State, 35 Tex. Cr. R. 351, 33 S. W. 875; Paris v. State, 35 Tex. Cr. R. 95, 31 S. W. 855; Casey v. State, 49 Tex. Cr. R. 175, 90 S. W. 1018; Johnson v. State, 22 Tex. App. 206, 2 S. W. 609; Gaines v. State, 53 S. W. 624; Maroney v. State, 95 S. W. 109; Hart v. State, 15 Tex. App. 202, 49 Am. Rep. 188; Shackelford v. State, 27 S. W. 8; Drake v. State, 29 Tex. App. 265, 15 S. W. 725; Washington v. State, 17 Tex. App. 203.

The state may only impeach her own witness by proof of contradictory statements, where he testifies to either affirmative or negative facts which are injurious to the state's case. The evidence brought out from the witness Vaughn was not injurious to the state in any manner. It was just a failure of proof. The question asked Vaughn was not authorized. Sapp v. State, 77 S. W. 457; White v. State, 62 S. W. 750; Young v. State, 44 S. W. 836; Williford v. State, 36 Tex. Cr. R. 424, 37 S. W. 761; Self v. State, 28 Tex. App. 408, 13 S. W. 602; Storms v. State, 37 S. W. 439; Clanton v. State, 13 Tex. App. 152; Tyler v. State, 13 Tex. App. 208; Ross v. State, 45 S. W. 808; Kirk v. State, 35 Tex. Cr. R. 230, 32 S. W. 1045; Somerville v. State, 6 Tex. App. 433; Davis v. State, 21 S. W. 369; Brown v. State, 55 Tex. Cr. R. 9, 114 S. W. 820; Baum v. State, 60 Tex. Cr. R. 638, 133 S. W. 271.

It has been held that, where the party is surprised by the answer of a witness, and that answer is hurtful to him or his cause, and when he has been led to believe by the witness that it would be favorable, under

our statute, under some circumstances, he has a right to contradict even his own witness. Jeter v. State, 52 Tex. Cr. R. 216, 106 S. W. 371; Baum v. State, 60 Tex. Cr. R. 638, 133 S. W. 271. But no authority can be found which would justify the party to impeach his own witness when that witness has sworn to no fact injurious to him, but there is simply a failure to make proof. Bailey v. State, 37 Tex. Cr. R. 581, 40 S. W. 281; Scott v. State, 20 S. W. 549; Vaden v. State, 25 S. W. 777.

The decisions have held, and correctly so, that error in permitting the state to impeach her own witness is not cured by limiting in the charge the hearsay testimony to impeachment. Skeen v. State, 51 Tex. Cr. R. 40, 100 S. W. 770; Ozark v. State, 51 Tex. Cr. R. 110, 100 S. W. 927; Williford v. State, 36 Tex. Cr. R. 414, 37 S. W. 761. It is also the rule that error in permitting the state to impeach her own witness is not cured by withdrawing such hearsay testimony. Williford v. State, 36 Tex. Cr. R. 414, 37 S. W. 761. These cases and authorities, it would seem, ought to be sufficient to settle the rule, if it be possible for decisions to settle a question. My Brethren cite, in support of the ruling of the trial court, Drake v. State, 29 Tex. App. 265, 15 S. W. 725, and Hickey v. State, 138 S. W. 1051. Those cases are directly in point against the majority opinion. Had Vaughn given testimony against the state upon the line indicated, and it was hurtful, there might have been reason for the impeachment; but under no known rule I have been able to find is the ruling of the trial court justified. It may be inferred, perhaps, from the statement of the opinion on rehearing that my Brethren conceived the idea that the conclusion they reached was justified by the fact, and they so state, that there was some issue between the witness Vaughn and the witness Lightfoot, in regard to what occurred in Vaughn's barber shop, in regard to the visit of the deceased and appellant during the evening preceding the homicide at night. The opinion travels upon the theory that the two witnesses were disagreeing upon whether it was Renn who visited the shop or Collins, the deceased, and made the threats. I have looked this matter up with some degree of care to see whether this is correct or not, and, as I read the record, their statement is clearly not justified. Vaughn testified that deceased, Collins, left the pistol at his barber shop in the morning, and went away. In the evening, about 5 or 6 o'clock he returned, got his pistol, and called for some oil with which to clean it; that he did clean and oil it, and made a statement to the effect that he was going to whip or kill Renn that night. Lightfoot was not at Vaughn's barber shop when this occurred, and does not so testify or intimate, and knew nothing about it. He testified that at another time during the same evening, but later, he was at Vaughn's barber shop, and

that Renn came also, and that while there Renn made threats with reference to the deceased, Collins. Collins was not in the shop at the time, and there is not a fact in the record to indicate that he was. Neither Vaughn nor Lightfoot ever suggested Collins' presence at that time. In other words, this record demonstrates the fact to be that Collins visited Vaughn's barber shop, oiled his pistol, made his threats, and went away, and that subsequently Renn came in, and Vaughn informed him as to what Collins had said about him, as to his purpose and intention of whipping him or killing him that night. Lightfoot was not present when Collins was in Vaughn's barber shop, but later when Renn came, and after Collins left, Lightfoot was there, so he states.

3. Another bill of exceptions recites that appellant's witness Vaughn testified that deceased had, at his (witness') barber shop, during the evening prior to the homicide at night, cleaned and oiled his pistol, at the time stating he was going to kill or whip Renn (appellant) that night; and that he (Vaughn) notified appellant of these threats and statements of the deceased before the homicide occurred. On cross-examination, Vaughn testified he was in his barber shop at the time of the shooting, and did not hear it, and that the state's witness Sims was not in his barber shop at that time, nor just after the shooting, and Stewart did not come into his (Vaughn's) barber shop just after the shooting, and say: "I hear some shooting down there; I reckon some negroes must be killing one another down there"—and that he (Vaughn) did not state in reply to said Stewart, "I guess that is Renn now, killing Collins." These questions were asked as basis for impeachment of Vaughn, and as a predicate for that purpose. The state then introduced Sims, who testified he was in Vaughn's barber shop when the shooting occurred, and heard it; that Stewart did come in and utter the remark above imputed to him; and that Vaughn replied, "I guess it is Renn now." A great number of objections, and practically every available one, were urged by appellant to the introduction of the above statement. My Brethren hold this was not error. As I understand the authorities in Texas, there is no decision that will sustain them, or the ruling of the trial court. An unbroken line of authorities holds the ruling of the trial court in this instance error, and material error. A great many of these cases are collated by Mr. Branch, in his work on Criminal Law of Texas (section 348).

Opinions expressed, in the absence of defendant, to the injured party or others that would point to the guilt of defendant, or connect him with the transaction, are hearsay. Jackson v. State, 20 Tex. App. 193; Langford v. State, 9 Tex. App. 287. It is also error to permit the state to impeach a witness by proof of a statement of a witness, ex-

pressing an apprehension of trouble, whether based on knowledge of defendant or his actions, or for any other reason. Wilson v. State, 37 Tex. Cr. R. 67, 38 S. W. 610; Vanhouser v. State, 52 Tex. Cr. R. 572, 108 S. W. 386; Hobbs v. State, 53 Tex. Cr. R. 82, 112 S. W. 308; Drake v. State, 29 Tex. App. 271, 15 S. W. 725; Woodward v. State, 50 Tex. Cr. R. 299, 97 S. W. 499; Bluman v. State, 33 Tex. Cr. R. 64, 21 S. W. 1027, 26 S. W. 75; Gaines v. State, 38 Tex. Cr. R. 220, 42 S. W. 385; Red v. State, 39 Tex. Cr. R. 423, 46 S. W. 408; Jennings v. State, 60 Tex. Cr. R. 421, 132 S. W. 475; Hickey v. State, 138 S. W. 1051.

It has also been held that it was error to introduce as evidence before the jury the opinion of a witness, as to the cause of the trouble, by impeaching the witness by proof of a statement expressing such opinion. Marsh v. State, 54 Tex. Cr. R. 147, 112 S. W. 320; Williford v. State, 36 Tex. Cr. R. 425, 37 S. W. 761. In quite a line of cases, it has been held error to permit the state to impeach a witness by proving, either by admission of the witness or evidence laying the predicate, that witness, by words or acts, had expressed an opinion of defendant's guilt, or has an opinion as to who had committed the offense. Cogdell v. State 43 Tex. Cr. R. 180, 63 S. W. 645; Morton v. State, 43 Tex. Cr. R. 537, 67 S. W. 115; Vann v. State, 45 Tex. Cr. R. 445, 77 S. W. 813; Davis v. State, 20 S. W. 923; Jenkins v. State, 45 Tex. Cr. R. 178, 75 S. W. 312; Watson v. State, 50 Tex. Cr. R. 172, 95 S. W. 115; Red v. State, 39 Tex. Cr. R. 423, 46 S. W. 408; Kirk v. State, 48 Tex. Cr. R. 624, 89 S. W. 1067; Parker v. State, 46 Tex. Cr. R. 468, 80 S. W. 1008, 108 Am. St. Rep. 1021; Scott v. State, 49 Tex. Cr. R. 390, 93 S. W. 112; Jennings v. State, 60 Tex. Cr. R. 421, 132 S. W. 475; Burnam v. State, 133 S. W. 1045.

It has also been held that the reasons of a witness for his actions, where they involve an opinion as to the guilt of defendant, or amount to an expression hurtful to him, are not admissible. Dempsey v. State, 27 Tex. App. 269, 11 S. W. 372, 11 Am. St. Rep. 193; Campbell v. State, 30 Tex. App. 649, 18 S. W. 409; Underwood v. State, 39 Tex. Cr. R. 412, 46 S. W. 245; Bennett v. State, 39 Tex. Cr. R. 649, 48 S. W. 61; Chambers v. State, 46 Tex. Cr. R. 62, 79 S. W. 572; Pinckord v. State, 13 Tex. App. 478; Smith v. State, 33 S. W. 1080. I deem it unnecessary to cite any greater number of authorities to show the error of the trial court in admitting the testimony, and the erroneous conclusion of the majority opinion in sustaining the ruling of the trial court. The rule is also well settled that remarks of bystanders, unheard by the accused, cannot be introduced. For collation of cases, see Branch, Criminal Law, § 343. The above are sufficient to satisfy, it would seem, any candid legal mind of such error.

4. The theory of appellant was self-defense, based on communicated threats and the acts and conduct of the deceased at the time of the shooting. The shooting occurred not far from the foot of the stairway that led up to a Masonic lodgeroom. Appellant and a friend were standing, leaning against the wall, talking. Deceased was coming down the street, until he got opposite appellant, and immediately turned in his direction, and, as appellant shows, made a demonstration, or placed himself in the attitude of causing appellant to believe that deceased was then about to attack him, and execute his previously uttered threats, and that thereupon he began shooting. The state offered evidence showing a conversation between a state's witness and deceased in regard to the deceased getting a blank application for a petition, perhaps, to send in name of the witness to the lodge for membership, and that he had started in the direction of where the shooting occurred, for the purpose of going upstairs into the lodgeroom for that purpose. This was unknown to appellant. Over the objection of appellant, these matters and statements were permitted to go to the jury. It is unnecessary to state the numerous objections urged. The ruling of the trial court was error, and my Brethren are clearly in error in sustaining such ruling. The authorities in Texas on this question are unbroken, holding such ruling to be error. It is a rule by statute and all the decisions that the case must be viewed from the defendant's standpoint, and as it reasonably appeared to him at the time he acted. This is a basic principle, fundamentally true in regard to an accused person, when on trial for his life or liberty, or for a violation of the law. The decision of my Brethren not only ignores the principle, but the effect of their opinion is to absolutely overturn it. The decisions hold, without dissent, that an accused person can only be bound by the facts as they reasonably appear to him. The undisclosed reasons, motives, or purposes of the deceased in being where the accused was, or in going to the scene of the homicide, or proof as to the real destination of the deceased, if it is not shown to have been known to the accused, is never admissible against him, where it affects his defense. Brumley v. State, 21 Tex. App. 238, 17 S. W. 140, 57 Am. Rep. 612; Johnson v. State, 22 Tex. App. 224, 2 S. W. 609; Ball v. State, 29 Tex. App. 125, 14 S. W. 1012; Gilcrease v. State, 33 Tex. Cr. R. 619, 28 S. W. 531; Stell v. State, 58 S. W. 75; Woodward v. State, 42 Tex. Cr. R. 207, 58 S. W. 135; Stanton v. State, 42 Tex. Cr. R. 271, 59 S. W. 271; Adams v. State, 64 S. W. 1056; Wall v. State, 62 S. W. 1063; Wooley v. State, 64 S. W. 1054; Adams v. State, 44 Tex. Cr. R. 66, 68 S. W. 270; Gray v. State, 47 Tex. Cr. R. 377, 83 S. W. 705; Saye v. State, 50 Tex. Cr. R. 572, 99 S. W. 551; Tillman v. State, 51 Tex. Cr. R. 204, 101 S. W. 210; Young v. State, 41 Tex. Cr. R. 444, 55

S. W. 331; Pratt v. State, 53 Tex. Cr. R. 281, 109 S. W. 138; Gant v. State, 55 Tex. Cr. R. 291, 116 S. W. 801; Bradley v. State, 60 Tex. Cr. R. 398, 132 S. W. 488; Darnell v. State, 58 Tex. Cr. R. 585, 126 S. W. 1126; Phipps v. State, 34 Tex. Cr. R. 564, 31 S. W. 397; Maroney v. State, 95 S. W. 109; Dowell v. State, 58 Tex. Cr. R. 482, 126 S. W. 874. It was held in Wooley v. State, 64 S. W. 1054, that the fact that such testimony is res gestæ constitutes no exception to the rule. Winn v. State, 54 Tex. Cr. R. 540, 113 S. W. 918; Simpson v. State, 48 Tex. Cr. R. 331, 87 S. W. 826; Richards v. State, 53 Tex. Cr. R. 412, 110 S. W. 432; Young v. State, 59 Tex. Cr. R. 137, 127 S. W. 1059.

Upon what theory the acts, declarations, and purposes of the deceased were admissible against the defendant, where the bill shows them unknown to the accused, is not explainable upon any theory of self-defense, or any known principle involved in that doctrine. It is a direct attack upon his self-defensive theory by evidence, of which he was entirely ignorant, and was a fatal thrust, and an illegal one at his self-defense. It is said that the law of self-defense is a natural law, inviolable and unassailable; that it is higher than municipal law, and has often been stated to be a God-given right. Under the decision of my Brethren, these bulwark and guaranteed rights are swept aside, and the undiscovered and unknown purposes of the deceased are made to bind the defendant and cut him off from his theory· and right of self-defense, and eliminate it from the case. Without discussing these matters further, I have stated this much and collated some of the authorities sustaining my dissenting views. I do not believe that the right of self-defense should thus be ruthlessly set aside.

I wish to make the above statements in regard to the transactions in order that it will more clearly elucidate the correctness of what I have said. This case has been tried upon false theories, and false application of the rules of law, or rather want of rules of law. There have been applied rules which are totally inapplicable to anything that arose on the trial, and in direct violation of every decision ever rendered by this court.

I therefore respectfully enter my dissent.