## John Ozark v. The State.

### No. 3915. Decided March 6, 1907.

**1.—Murder in First Degree—Evidence—Bloody Clothes—Circumstances.**

Upon trial for murder there was no error in admitting testimony and circumstances with reference to an overcoat which had blood stains upon it, although the same was not positively identified as that of the defendant.

**2.—Same—Evidence—Wounds of Deceased—Opinion of Witness.**

Where upon trial for murder a physician testified about the character of the injuries upon the head of deceased and gave his opinion that they were inflicted with a blunt instrument, there was no error.

**3.—Same—Evidence—Morphine—Intoxication.**

Upon trial for murder, where the evidence showed that the deceased was intoxicated at the time of the homicide and that he drank whisky, there was no error to show that the deceased had attempted to buy morphine which had been refused him.

**4.—Same—Impeachment of Witness—Rule Stated.**

Where the State or defense places a witness upon the stand, and said witness testifies against the party introducing him, the rule authorizes a contradiction of the witness for the purpose of impeaching his testimony, but this rule does not apply where the witness does not testify against the party introducing him; and where a State's witness denied that he had hid a certain overcoat on the morning after the homicide, he could not be contradicted by other witnesses that he had admitted this fact to other parties.

**5.—Same—Examining Trial Testimony—Predicate—Question of Fact.**

If a witness is out of the State, or if he has left the State by inducement of defendant, or absents himself from the trial at the instance of defendant, the witness' testimony taken on the examining trial may be introduced in evidence; and if the predicate upon which it is introduced becomes a question of fact that matter should be submitted to the jury.

Appeal from the District Court of McLennan. Tried below before the Hon. Sam R. Scott.

Appeal from a conviction of murder in the first degree; penalty, life imprisonment in the penitentiary.

The opinion states the case.

*O. L. Stribling,* for appellant.—On question of impeaching testimony: Woodward v. State, 17 Texas Ct. Rep., 129; Codgell v. State, 43 Texas Crim. Rep., 178; Morton v. State, id., 533.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at a life sentence in the penitentiary.

The facts in brief in this case are as follows: Deceased, Antone Janda, had been making a crop on a farm near the little town of Axtell, McLennan County, Texas, and while living on said farm he accumulated something near $125, which money was in two $50 bills, and the rest in small bills. This money was enclosed in an antique watch case that deceased brought over from Bohemia, and after placing the money in said case he placed same in his watch pocket in his pants. Deceased left the place of his residence as stated and went to the little town of Axtell. There he met appellant John Ozark in the Dowdy saloon. Deceased seemed to have drank to quite an excess while there; spent some money after changing a $5 bill with the saloon man, and about eleven o'clock at night he started home with appellant and his two step-sons, Fred and Joe Slovacek. After the four parties had gone something like a half a mile the deceased, being quite intoxicated, and Fred Slovacek trying to assist him along, the two boys Fred and Joe left the deceased and went a near way to their home, and when they left the deceased, John Ozark was some little distance ahead of the boys in the road going toward home. Fred Slovacek although he testified in the examining trial, was not present upon this trial. Joe Slovacek was placed upon the stand and detailed the last stated facts, and further said that at the time he did not know when his father came home; that he was asleep. Appellant about three o'clock in the morning, the weather being quite cold, went to the house of Milton DeFate, a negro who lived some one hundred and fifty yards from appellant's home; appellant, after calling the negro out, made this statement, "Come out here, I want to talk with you a minute." Said he went down the road after the old man and called the old man and shook him and the old man didn't say anything. Appellant then stated, "Me got scared and ran; me wants you to go with me; me afraid to come down by myself, but afraid somebody would say I had killed the old man." "I replied, 'why don't you get your boys?' He said, 'They will not go with me.' I lit my lantern and looked at the clock and put on my clothes and we went on, went about half a mile I guess. I was on the left hand side walking and got even with the old man, and he got off the horse and went to the old man with his light. I didn't go to the old man. The weeds were high over his head. I could see the red through the weeds looked like blood. He said, 'The

old man is dead, let's see if he had any money on him.' I said, 'No, let's go and get an officer and get them to search him,' and he said all right, and I and him went on to Axtell walking, appellant leading the horse." The evidence further shows that the negro and appellant went after the officers. They were subsequently brought down to the place where the deceased lay, that is the justice of the peace and deputy sheriff. When the officers returned with appellant and the negro Milton DeFate, appellant, in the course of conversation, said to the justice of the peace: "You do not think I killed him, do you? If I had killed him I would have taken him in the woods and hung him." Deceased was examined by the officers. No money was found on him, but an imprint in his watch pocket was seen upon his pants showing where the watch case had been taken from the case in which he carried his money. There are a few other circumstances in the record but we do not deem it necessary to state all of them, but one other fact we will here state. The State placed Joe Slovacek upon the stand and after stating the above facts, as having been stated by him, he stated that his father's coat was lying in the room on some cotton-seed and that on Monday evening, the killing have occured Tuesday night, he (witness) went hunting and killed a couple of cotton-tail rabbits and laid them on the gallery and the cats took them and dragged the rabbits on to his father's overcoat blooding same, and that he, through fear of a whipping for this negligence on his part, took the overcoat about a mile away from the house and hid it. The State by various witnesses, however, contradicts this statement in part, and proves that the boy Joe told the deputy sheriff, the sheriff and justice of the peace and perhaps others, that his father had given him the coat on the night or morning after the killing and made him go and hide the coat in a place where it was found. This the witness Joe Slovacek persistently denied as being true, but he says he made said statements through fear.

Bill of exceptions number 2 shows the county attorney offered in evidence the overcoat which had been identified as the overcoat of the defendant by the witness Joe Slovacek, and as being the overcoat on which blood stains were made by a cat eating rabbits on same on Monday preceding the homicide on the following Tuesday, and being the overcoat which the witness Joe Slovacek testified that he hid in the woods on said Monday to conceal the same from the defendant in order to prevent defendant from chastising him for getting blood on said overcoat, to the introduction of which appellant objected because the same was improper evidence before the jury, and its introduction could not tend to throw any light on the issue before the jury, and it had not been proven that the defendant was wearing the overcoat on the night of the homicide and at the time of the homicide, nor that the stain on same was human blood, and the only effect the introduction of said overcoat before the jury could have would be to prejudice the minds of the jury against appellant. The bill was al-

lowed with this explanation: "While the testimony of the trial did not positively identify the coat in question as being the one worn by the defendant on the night of the homicide, still there was evidence before the jury to the effect that the defendant on the night in question was wearing an overcoat." If the evidence shows circumstantially or by positive testimony that the coat in question belonged to appellant, it could be introduced as a criminative fact against appellant. The State could go to the extent of proving that the coat was where it was found, and who was with the party who found it. If the State could prove by any one that they knew it was appellant's coat or that it had been hid at the instance of appellant, these facts could be proved also. Under the facts stated in this bill we find no error.

Bill of exceptions number 3 shows that appellant objected to Dr. McGlasson testifying about the character of the injuries upon the head of deceased, and as to his opinion as to what kind of instrument made it. The bill shows that the witness gave in detail his reason, thinking that a blunt instrument made the wound by virtue of the character of the wounds. This was proper testimony.

Bill of exceptions number 4 shows that R. C. Thompson was permitted to testify that deceased attempted to buy some morphine from him on the night that he was killed. He refused to let him have it without a prescription and deceased went off. We cannot see how this testimony injured appellant. If the testimony had shown that he got the morphine, it would be a relevant fact accounting in part for the stupor that the evidence shows he was laboring under a short while before he left the saloon. The witness says he refused to let him have it, and the only conclusion from said refusal would be that it was the whisky that intoxicated him, and not the morphine. Perhaps on this theory it would be permissible.

Bill of exceptions number 9 shows the following: While the witness Joe Slovacek was testifying as a witness, being introduced by the State, the county attorney propounded the following questions: "Didn't you tell Mr. Tilley that John (the defendant) gave you the overcoat? A. No, sir. Q. Do you know Mr. Tilley, the sheriff? A. No, sir. Q. Or Mr. Pillot? A. Yes, sir. Q. Did you tell Mr. Pillot that your father gave you the overcoat? to which the defendant then and there objected, because said question and the answer thereto was irrelevant, and the State had no right to propound said question to said witness for the purpose of contradicting him, and any statement made by said witness in reference to said overcoat not in defendant's presence would be immaterial and not binding upon defendant, and would be the declaration of a third party, not made in the presence of the defendant, and was further immaterial because the said witness had already been permitted to testify that he hid the overcoat on the day preceding the homicide, which testimony was uncontradicted. The witness answered: "I didn't mean to say

it that way." This bill is allowed with this explanation "That the testimony was controlled by the court in its charge to the jury in this, that the jury was instructed by the court not to consider said testimony against defendant for any purpose."

Bill of exceptions number 10 shows that the county attorney asked the same witness the following questions: "Q. Didn't you tell me in Axtell on the stand and cry and say that you were afraid your father would beat you up for telling it (meaning about the overcoat)? Q. Didn't you tell me upon my asking you the question, and the grand jury, that you took the overcoat, your father gave it to you and told you to go hide it that morning after the killing that night? Didn't you tell me that? A. 'You made me say it that way.'"

Bill of exceptions number 11 shows that the justice of the peace W. H. Edwards was placed on the stand, and testified that the State's witness Joe Slovacek went with him to where the overcoat was found in the woods, and stated his father had given him the coat immediately after the homicide and told him to hide it. The witness went with Joe and found the coat. This testimony was not admissible. Various other bills present practically the same question, wherein they ask the State's witness Joe Slovacek if he did not tell various other parties that his father had given him the coat with instructions to hide it the morning after the homicide, and upon his denying it the witnesses were placed upon the stand and testified that the witness Joe Slovacek did admit and tell them his father had given him the coat with instructions to hide it, and that he Joe went with the witnesses to where the coat was subsequently found. None of this testimony was admissible. The witness Joe had been placed upon the stand by the State, had testified to nothing against the State's interest, and it was not proper for the State to impeach its own witness, and no character of limitation of the effect of the testimony would cure this kind of an injury to the rights of appellant. Where the State or defense places a witness upon the stand and said witness testifies against the party introducing him, the rules of this court authorize a contradiction of the witness for the purpose of impeaching his testimony, but here the witness did not testify against the interest of the State, but failed to tell the facts as he had previously told them to other people. If he had testified to the facts as he had previously told them to the officials and other witnesses, it would have been a strong criminative fact of appellant, but he simply failed to do so and testified to facts indicating that blood had been placed upon the coat prior to the homicide. We do not deem it necessary to discuss the matter further, but will say this testimony was clearly inadmissible, since it was proving indirectly the guilt of appellant by the State's own witness. It follows, therefore, that the court erred in permitting this character of impeachment. In view of another trial we would suggest that it would be permissible for the State to prove where the overcoat was found and who was present, and as stated above, if ap-

pellant told any one to place the coat at a certain place, this could be proven. If the coat is identified upon another trial by circumstantial or positive testimony as appellant's coat, it can be introduced.

Appellant also complains at the effort of the district attorney to introduce the examining trial testimony of Fred Slovacek. Upon another trial, if said witness is out of the State, or if the evidence shows, by positive or circumstantial evidence, that he has left or was induced to leave the State by appellant, or is absenting himself from this trial at the instance of appellant, and either of the predicates above suggested are laid, the testimony of the said Slovacek could be introduced. Of course if there is an issue or doubt raised as to the accuracy of the predicate laid by the evidence, then the court should submit the predicate as a question of act to the jury for the jury to pass upon before considering the testimony of the witness Fred Slovacek, provided same is introduced. We do not deem it necessary to take up seriatim all of appellant's assignments of error, since most of the complaints cannot arise upon another trial, but for the errors pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*