CHARLES WHITE *alias* CHARLIE WHITE V. STATE

No. 28,879. April 24, 1957.
Appellant's Motion for Rehearing Overruled
October 30, 1957.
Appellant's Second Motion for Rehearing Overruled
(Without Written Opinion) November 27, 1957.

*Percy Foreman,* Houston, *J. P. Darrouzet* and *Victor Rogers,* Austin, for appellant.

*Leon Douglas,* State's Attorney, Austin, for the state.

BELCHER, Judge.

The conviction is for murder; the indictment alleging that appellant killed the deceased "by strangling him with a wire;" the punishment was assessed at death.

Mrs. Lambert Berkman, daughter of the deceased, testified that the appellant and his brother, Calvin White, came to the farm home where she and her husband lived about 1 P.M., July 21, 1955, in a blue-colored pickup; that appellant asked about her father and brother and where they were living, and she told

him; that he further asked if her brother had married and if they were "still batching," and she told him "yes" (her mother had died several years before) ; that he next asked if her brother was working, where he worked, and what time he went to work in the morning, and she told him that he worked at the Texas Quarry and left home about 7 A.M. because he was due at his place of employment by 8 A.M. She testified that the appellant asked if her brother and father still had some cattle and how many, and she told him they had about 25. She testified also that she had a custom of telephoning her father every morning usually between 7:30 A.M. and 10 A.M., and when she was unable to get him on the telephone on Monday morning, July 25, 1955, she telephoned a neighbor of her father's, asked her to see about him, and the neighbor soon thereafter telephoned from her father's house.

J. C. Robinson testified that he was a neighbor to the Heidel's and that he saw a blue-colored pickup at the hay barn located some distance from the corral and residence of the Heidel farm about 8:30 A.M., July 25, 1955, and shortly thereafter saw it leaving the barn at a fast rate of speed.

D. C. Dobbins, a cattle buyer, testified that on Wednesday, July 20, 1955, the appellant and another man came to his home in a blue-colored pickup; that appellant asked about borrowing his trailer which he wanted on the following Friday to haul about 25 head of cattle, and he told him he could have it if he was not using it; that he next saw appellant about 6 P.M., Sunday, July 24, when he came in the blue-colored pickup to his home and told him that the man with him the other day had decided to sell his cattle the next day (Monday) ; that this man had 24 head, had said he would take $1200 for them, and they were located on the Burnet highway. He testified that he agreed to go with appellant to see the cattle about 9 or 10 o'clock the next morning; that appellant returned to his home at 9:30 A.M., Monday, July 25, in the blue-colored pickup, and they went in the pickup out on the Burnet road about 6 or 7 miles to the Heidel farm. He further testified that when they arrived at the Heidel place he found 24 head of cattle in a corral with some hay scattered around; that after he had inspected the cattle, a man came to the corral who claimed to be the owner of the cattle and asked what he would give for them; that the owner stated that he wanted $1200, and he later said: "I will give you $900 for them, and go to the bank and get the money" because the appellant had told him that the owner wouldn't take a check, and which offer was later accepted. He further testified that he

asked the owner to go with him to the bank for the money and to get Mr. Schwertner's truck to haul them, but the owner declined giving his reason that a man from Burnet was coming to see him, and that the owner said: "You bring the money back out here, and I will sell you them when you get back." The person claiming to be the owner upon being asked stated that his name was Roy C. Poke. Robbins testified that the appellant took him home in the blue-colored pickup, and after appellant left his home, he telephoned Gene Schwertner and they went to the Heidel place with sufficient money to pay for the cattle; that while they were looking at the cattle in the corral he saw "the blue pickup" come out of the bushes about one hundred yards to the east which was the same pickup in which he had ridden with the appellant that morning; that he recognized the occupants of the pickup as the appellant and the pretended owner of the cattle, who was in fact Calvin White, as they passed along the road about fifty yards away going west; that he waived his hat and called for them to stop and Schwertner blew the horn on his car, but the appellant and Calvin White never looked in their direction, and that they tried to overtake them in Schwertner's car but were unable to do so.

Ed Heidel, a son of the deceased, Felix Heidel who was 78 years of age, testified that they had lived together on a farm northwest of the city of Austin, and that about 6:45 A.M., July 25, 1955, he left the farm for his job east of Austin; that about 1 P.M. that day in response to a telephone call he returned home, was unable to locate his father, found that a .38 Colt pistol was missing from the house, and also missed a roll of wire for a pickup haybaler from the garage, and that their 24 head of cattle had since morning been placed in the corral and fed some hay from the barn.

Sheriff Lang testified that while he was investigating the disappearance of Felix Heidel he took the appellant into custody, and on July 28 the appellant directed him to a place about six miles east of the city of Bastrop where he pointed to a grave which had been covered with the tops cut from small pine trees; that when they had removed about five feet of soft, damp soil they found the body of Felix Heidel, which was swollen and in a state of putrefaction and the tongue was protruding; that at a depth of about two and one-half feet they found a small roll of wire. He further testified that there was a wire around the neck of the body which was brought from the front to the back of the head, "then some instrument of some kind having been apparently placed in the wire, the wire brought up around that

and twisted, and then it turned in this manner. Then, when that was taken out, this open place was left in that wire, in that manner;" that the wire was very tightly twisted and impressed into the flesh all around the neck except at the back where the twist was, and that in his opinion the wire around the neck of the body was the same as the wire in the roll found in the grave. He testified also that appellant pointed out a place about three miles east of Bastrop where they, at his direction, found a .38 Colt pistol.

The proof shows that the .38 Colt pistol found by Sheriff Lang on July 28 east of Bastrop under the direction of the appellant was the same .38 Colt pistol which was missing from the Heidel home on July 25, 1955.

The proof further shows that the deceased was, prior to and on the morning of July 25, 1955, in good health and had been working about the house and the farm.

It was stipulated that the roll of wire which Sheriff Lang identified as having been found in the grave was the same roll of wire which was missing on July 25 from the garage on the Heidel farm.

The testimony shows that within a short time after the body of the deceased was removed from the grave it was transferred to a funeral home in Austin. It was further shown that the wire was misplaced and never found after the body arrived in Austin.

Dr. Harold M. Williams, county physician of Travis Counay, testified that he examined the head, neck and upper portions of the trunk and the hands and wrists of the body of the deceased and that the skin was swollen and puffy and the body showed marked signs of putrefaction; that there was an indentation caused by some force in the nature of a constriction around the neck in which "(I) was able to run my index finger around the base of it. * * * It was perhaps between an inch and an inch and a half deep. I know the finger went well down in the grove," and "that something had been tightly wound around it" which had been released "fairly recently;" that such indentation about the neck could have been caused by a wire and that such constriction would not be compatible with the existence of human life because it was sufficient to close the windpipe and end the life of the deceased and that in his opinion the cause of death was asphyxia due to strangulation, and that he did not find any

other evidence to account for the death of the deceased except the indentation about the neck.

On cross-examination Dr. Williams testified that he did not perform an autopsy or examine the lower part of the body; that he did not know whether the ligature which made the constriction was placed around the neck before or after death, but that his expressed opinion as to the cause of death assumed that it was placed there before death.

Appellant did not testify or offer any evidence in his behalf.

Appellant contends that the opinion of Dr. Williams that the cause of death of the deceased was asphyxia due to strangulation should have been excluded because it was the expression of an opinion on a disputed issue and invaded the province of the jury.

The indictment alleged that the deceased was killed by strangulation with a wire. The doctor's opinion was only that the deceased's death was due to asphyxia by strangulation. His testimony hereinabove related shows the nature and extent of the examination he made of the body, describes its condition, and gives the facts as found upon such examination. The opinion complained of does not attempt to state how or by what means the deceased was killed, but only states his opinion as to the cause of death. The opinion was admissible. Ozark v. State, 51 Texas Cr. Rep. 106, 100 S.W. 927; Tolston v. State, 93 Texas Cr. Rep. 493, 248 S.W. 50; Pinson v. State, 94 Texas Cr. Rep. 517, 251 S.W. 1092.

Appellant next contends that the state failed to prove the corpus delicti of the crime in that it failed to prove the cause of death of the deceased and further contends that the proof offered by the state as to the manner and means by which the deceased was killed was at variance with the allegation that he was killed by strangulation with a wire.

The state relies upon circumstantial evidence to prove the fact that the appellant killed or participated as a principal in the killing of the deceased as well as to prove that the deceased was killed as alleged in the indictment.

The court charged upon and applied the law of principals in submitting the case to the jury.

The testimony shows that prior to and on July 25 the appellant and Calvin White had concentrated their efforts toward the acquisition and sale of the Heidel cattle; that Felix B. Heidel, the deceased, and a roll of wire were missing from the Heidel farm that day; and the circumstances show that the appellant and Calvin White were the last persons with him during his lifetime. Appellant directed the officers to a place where he pointed to a grave from which the body of Felix B. Heidel with a wire tightly twisted around the neck was removed, and there also was found a roll of wire in the grave which was shown to be the same roll of wire missing from the Heidel farm; and the sheriff expressed the opinion that the wire around the neck was the same kind of wire as the wire in the roll found in the grave. Appellant also directed the officers to a place where they, at his direction, found the .38 Colt pistol which was missing from the Heidel farm. It is evident that Felix B. Heidel came to his death by means of violence applied to his body.

The facts and circumstances are sufficient to warrant and support the finding of the jury that the appellant killed or participated as a principal in the killing of the deceased by strangling him with a wire as charged in the indictment. Whitaker v. State, 160 Texas Cr. Rep. 271, 268 S.W. 2d 172.

Appellant complains of the trial court's refusal to instruct the jury in accordance with the provisions of Art. 2, Vernon's Ann. P.C., that the object of punishment is to suppress crime and reform the offender.

The nature of the facts in evidence in this case in support of the offense charged and the penalty authorized to be assessed would make any instruction thereon a comment on the weight of the evidence and tend to convey the opinion of the court to the jury as to the disposition that should be made of the case — hence, would be improper.

No reversible error appearing, the judgment is affirmed.

Opinion approved by the Court.

ON APPELLANT'S MOTION FOR REHEARING

DICE, Judge.

Appellant insists that the evidence is insufficient to sustain the conviction for two reasons.

First, it is contended that the evidence wholly fails to establish the essential averment that the strangulation which produced the death of the deceased was caused by a wire because of the testimony of Dr. Williams that the indentation on the neck of the deceased was compatible with a small rope.

We do not consider the statement of Dr. Williams as rendering the evidence insufficient to show that the strangulation which produced the death of the deceased was caused by a wire. As shown in our original opinion, the evidence reflects that when the body of the deceased was found there was a wire around the neck impressed into the flesh. Dr. Williams, in expressing his opinion that the cause of death of the deceased was asphyxia due to strangulation, testified that upon his examination of the body of the deceased he found an indenture around the neck between one and one and one half inches deep and that it could have been caused by a wire.

In homicide cases the cause of death may be proved by circumstantial evidence. Tellez v. State, 162 Texas Cr. Rep. 456, 286 S.W. 2d 154. We find the evidence sufficient to show that the cause of death of the deceased was strangulation with a wire as charged in the indictment.

Appellant next contends that the evidence relied upon by the state to sustain the conviction does not satisfy the requirements of the circumstantial evidence rule in that it does not exclude every other hypothesis except that of his guilt.

Appellant insists that the record, at the most, suggests a design on the part of him and his brother to steal cattle and other personalty from the deceased; that such proof would justify the jury in concluding that he and his brother equally had motive and opportunity to kill the deceased; that such circumstances might support an inference not only that he had something to do with the death of the deceased but would equally support an inference that his brother was the main actor and that appellant's participation was only that of an accessory which he could not be under the statute.

As pointed out in our original opinion, the court charged upon and applied the law of principals in submitting the issue of appellant's guilt to the jury. We have again reviewed the record in the light of appellant's contention and remain convinced that the evidence is sufficient to support the verdict of

the jury finding him guilty and to exclude every other reasonable hypothesis except that of his guilt.

The motion is overruled.

Opinion approved by the Court.