**Harold HART, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 63354.**

Court of Criminal Appeals of Texas, Panel No. 3.

June 23, 1982.

Lynn S. Patton, Longview, for appellant.

Odis R. Hill, Dist. Atty., and Alvin G. Khoury, Asst. Dist. Atty., Longview, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, DALLY and McCOR-MICK, JJ.

## OPINION

DALLY, Judge.

This is an appeal from a conviction for the offense of possession of more than four ounces of marihuana; the punishment is imprisonment for five years and a fine of $1,000.

The appellant asserts that the evidence is insufficient to support the verdict, and that the court erred: in failing to allow him to voir dire the prospective jurors on the issue of former jeopardy, in failing to charge the jury on the issue of former jeopardy, in failing to charge the jury on the lesser included offenses, in failing to charge the jury on the objectives of the Penal Code, Section 1.02, and in failing to allow him to interrogate character witnesses outside the presence of the jury before they testified to his reputation.

The appellant complains that the evidence is insufficient to sustain his conviction. The appellant, his wife, and Thomas Earl Montgomery were arrested when officers armed with a search warrant searched a trailer home. The appellant had in his sock nine hand rolled cigarettes shown to be marihuana cigarettes which weighed .30 ounces. Larger amounts of marihuana were found in the trailer, 105 baggies in one bedroom where a laundry ticket bearing the appellant's name was also found and there was a smell of marihuana in the trailer.

There was evidence that appellant paid utility bills for the premises where the marihuana was found. The evidence is amply sufficient to prove the appellant was in possession or joint possession of all of the marihuana found on the premises and to sustain the jury's verdict.

The appellant who had filed a plea of former jeopardy complains because the trial court refused to allow him to voir dire the jury on that issue, and because the trial court refused to submit an instruction to the jury on that issue. In a former trial on the same indictment during the direct examination of the first witness the trial court granted appellant's motion for a mistrial. Prior to that trial the court granted the appellant's motion for discovery and inspection and ordered the prosecutor to reveal all papers and objects of real evidence in his possession. The first witness testified that he found some men's clothing in a closet in a bedroom where some of the marihuana had been found. It was developed that the clothing in a cleaning bag had a laundry ticket attached. When the laundry ticket was marked as an exhibit, appellant's counsel moved for a mistrial, because the laundry ticket had not been produced for inspection prior to trial. Although the exhibit had not yet been offered in evidence, the court granted the appellant's motion for a mistrial.

The Supreme Court has very recently held that where a defendant successfully moves for a mistrial he may invoke the bar of double jeopardy in a second effort to try him only if the conduct giving rise to the successful motion for mistrial was prosecutorial or judicial conduct intended to provoke the defendant into moving for the mistrial. *Oregon v. Kennedy*, —— U.S. ——, 102 S.Ct. 2083, 72 L.Ed.2d —— (1982). The unrebutted testimony of the prosecutor on the second trial conclusively shows the prosecutor did not intend his conduct to provoke the appellant into moving for a mistrial. The prosecutor's testimony is appended.

The Court's failure to allow the appellant to voir dire the jury and its failure to charge the jury on the issue of former jeopardy was not error.

A charge on the lesser included offenses of possession of less than four ounces of marihuana was not submitted to the jury. Merely because a lesser offense is included within the proof of a greater offense, a charge on the lesser offense is not required unless there is testimony that the appellant, if guilty, is guilty only of the lesser offense. *McBrayer v. State*, 504 S.W.2d 445 (Tex.Cr.App.1974); *Royster v. State*, 622 S.W.2d 442 (Tex.Cr.App.1981). In view of the evidence already summarized there is nothing to show that the appellant was only guilty of possession of the nine cigarettes found in his sock. The evidence did not require the court to submit instructions on the lesser included offenses. Cf. *McShane v. State*, 530 S.W.2d 307 (Tex.Cr. App.1975), where the defendant denied possessing the larger amount of marihuana but admitted possessing less than four ounces.

The appellant complains that the court erred in refusing to charge the jurors informing them of the objectives of the penal code as set out in V.T.C.A. Penal Code, Section 1.02. The appellant contends he was entitled to such a charge because he alleges the prosecutor misinformed the jury on the law. The prosecutor in explaining the bifurcated trial said, "The first stage is primarily designed to see that the defendant and his rights are protected from society, from the system. And when we come into the second stage, at the punishment stage, I believe its purpose is to protect society from the person found guilty." When this explanation was made on voir dire, the appellant's counsel objected, but failed to obtain a ruling of the court; consequently, he does not predicate error on the prosecutor's voir dire of the jury. However, the appellant requested and the court refused to instruct the jury on the objectives of the penal code. V.T.C.A. Penal Code, Section 1.02. It has been generally held that a charge on the objectives of the penal code is improper. *White v. State*, 165 Tex.Cr.R. 339, 306 S.W.2d 903 (1957); *Crain v. State*, 394 S.W.2d 165 (Tex.Cr.App.1965);

in any event the refusal to submit such an instruction was not an abuse of discretion.

■ In his remaining ground of error the appellant urges the court erred in refusing to allow his counsel out of the presence of the jury to test the character witnesses' knowledge and basis for their testimony concerning the appellant's general reputation in the community for being a peaceful and law abiding citizen. Since no bill of exception is in the record, error is not shown. *Crawford v. State,* 480 S.W.2d 724 (Tex.Cr.App.1972); *Curtis v. State,* 519 S.W.2d 883 (Tex.Cr.App.1975).

The judgment is affirmed.

### ADDENDUM

### TESTIMONY OF THE PROSECUTOR

MR. KHOURY: On Tuesday, January the 16th, 1979, a hearing was held before the Honorable David C. Moore, Judge of the 124th District Court on the motions that had been filed by Mr. Lynn Patton on behalf of the Defendant in this case and related Defendants. In the course of the Discovery Motions, the Court made a ruling which I interpreted to mean, anything that I had physically in my possession, I was to turn over to Mr. Patton for his inspection. On Monday of last week, and that would be January the 22nd, 1979, I was assigned primarily three cases to try—A burglary case in which I picked a Jury on Monday morning, went to trial, and argued it on Tuesday, and a verdict came in; I immediately went to work in getting ready for the trial of the case that was to follow, an aggravated rape case that was very complicated, and a number of witnesses to be interviewed, over and over again. Also attempting to overcome some reluctance of the victim of the rape about going forward and having to use a little psychology with her. On Wednesday morning last week, I selected a jury not only on the aggravated rape trial, but the trial for this Defendant, Harold Hart, Jr. Immediately upon selecting two juries, I began the trial of the aggravated rape. I was in trial all Wednesday afternoon; we completed the testimony in the rape case somewhere around 9:30 or 10:00 A.M. on Thursday morning. Our next procedure in that case was to argue the case to the jury, which we did. The jury received the matter somewhere close to 11:00 o'clock. As a trial lawyer, you're in a state of great excitement during the course of your argument. You have got to have been there to understand what I am talking about. It takes you a while to start coming back down to earth after you have argued a case to a jury, and get your mind back on what you're doing. You have psyched yourself up to argue and you have to get your mind back after a period of time. Well, no sooner than I finished my argument, I was told my witnesses in this case were ready for me to interview. We interviewed—I interviewed the witnesses for a period of approximately one hour, making sure that what everyone had done, and what exhibits we actually had; during the course of that particular interview on Thursday morning between 11:00 and 12:00 o'clock I first learned from Agent Jim York that he had seized some items that were not listed in the report that he had furnished me, by which I prepared for trial, these being the items we have now introduced before this Jury. At 12:00 o'clock, I was ready to go to lunch, but an Agent from the U.S. Secret Service came in, he was working some forgeries in this area, and I spent my lunch hour, until 1:00 o'clock, with that agent. From 1:00 o'clock—I then went up to Judge Vascocu's Court where my witnesses were assembling. Up till 1:25, two of the witnesses had still not shown up and I was becoming concerned, trying to get my investigator to locate them to make sure they was in pocket so the Judge and the jury were not kept waiting on us. This is at 1:25, and we are scheduled to go at 1:30. At 1:25, I

walked into Judge's Chambers and Lynn Patton and Pat Patton are in there, and we're just shooting the breeze. And nothing is on my mind but the fact I'm getting ready to try this case. I didn't even think about the tickets, and how they related to the Discovery Motion, and that concludes my part of my testimony.