**Melvin Anthony CANE, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 987–84.

Court of Criminal Appeals of Texas, En Banc.

Oct. 9, 1985.

Harold J. Laine, Jr. (court appointed), Beaumont, for appellant.

James S. McGrath, Dist. Atty. and John R. DeWitt, Asst. Dist. Atty., Beaumont, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellant was convicted of the offense of aggravated kidnapping on his plea of guilty to a jury. The jury assessed punishment at confinement in the Texas Department of Corrections for a term of twenty (20) years. The Beaumont Court of Appeals reversed the conviction in a published opinion. *Cane v. State*, 698 S.W.2d 366 (Tex.App.—Beaumont, 1984). We granted the State's petition for discretionary review to determine whether the court of appeals erred in reversing the trial court on the basis of the trial court's charge to the jury on the objectives of the Penal Code contained in V.T.C.A. Penal Code, § 1.02. Having found that the court of appeals erred, we reverse.

The trial court, in its charge to the jury on punishment, included, inter alia, the following language:

"*OBJECTIVES OF LAW:*

"In arriving at your verdict, you should consider the following objectives of our criminal law:

"(1) To insure the public safety through:

"(A) The deterrent influence of the penalties provided:

"(B) The rehabilitation of those convicted, and;

"(C) Punishment as may be necessary to prevent likely reoccurrence of criminal behavior.

"(2) To give fair warning of what is prohibited and of the consequences of violation.

"(3) To prescribe penalties that are proportionate to the seriousness of the offense and that permits recognition of differences in rehabilitation possibilities among individual offenders."

For reasons not discernible from the briefs, the petition for discretionary review, or the record, the trial judge did not include within this portion of the charge, subsections (4), (5), and (6) of § 1.02, supra.[1]

The court of appeals found that the appellant properly objected to the inclusion of this language from § 1.02, supra, in the charge,[2] and the court below reversed appellant's conviction pursuant to what it perceived this Court's holding to be in *Hart v. State*, 634 S.W.2d 714 (Tex.Cr.App.1982).

In *Hart*, supra, the defendant complained that the trial court erred in *refusing* to charge the jury on the objectives contained in § 1.02, supra. In response, this Court observed:

1. Nor is there a clue in the transcript or the statement of facts as to why this charge was given. The appellant, in his response to the State's petition, avers that this particular charge is only utilized in Jefferson County. There is nothing in the record to substantiate such an averment. However, see *Wilson v. State*, 680 S.W.2d 539 (Tex.App.—Beaumont 1984), where this same Jefferson County trial court submitted an identical charge on the objectives of the Penal Code.

2. "MR. LAINE: Your Honor, the defendant objects to that portion of the Court's charge entitled "Objections of Law," and ask that it be removed.
"THE COURT: Objection is overruled. Do you have any other objections?
"MR. LAINE: No, your Honor, but I would like an opportunity to dictate the full objection.
"THE COURT: Yes, I thought you were through. Go ahead.
"MR. LAINE: I'm sorry. 'Comes now the defendant, in the above entitled and numbered cause, and files this Objection to the Court's Charge, at the Punishment phase of

"It has been generally held that a charge on the objectives of the penal code is improper. *White v. State*, 165 Tex.Cr.R. 339, 306 S.W.2d 903 (Tex.Cr. App.1965); *Crain v. State*, 394 S.W.2d 165 (Tex.Cr.App.1965); in any event the refusal to submit such an instruction was not an abuse of discretion." *Hart*, supra, at 716–717.

In examining the holding in *Hart*, supra, we find that its genesis lies in *White*, supra. In *White*, as was the case in *Hart*, the defendant objected to the trial court's *failure*[3] to include a jury charge on the objectives of the Penal Code. Commissioner Belcher, writing for this Court, concluded that:

"The nature of the facts in evidence in this case in support of the offense charged and the penalty authorized to be assessed would make any instruction thereon a comment on the weight of the evidence and tend to convey the opinion of the court to the jury as to the disposition that should be made of the case— hence, would be improper." *White*, supra.

This Court cited *White* in *Crain*, finding no error in the trial court's refusal to in-

the proceedings, and, in particular, the defendant objects to that portion of the Court's Charge entitled "Objectives of Law," for the reasons that said instructions, as propounded to the jurors, requires them to take into account facts and/or circumstances now [sic] necessarily within the common field of knowledge of the jurors, or the jury as a whole, and thereby causes them to speculate and to take into consideration others matters wholly out of evidence. As such, this instruction amounts to—amounts, in the least, to a comment on the weight of the evidence, and, in the most, to an unbridled attempt to permit the jurors to base their punishment verdict on guidelines for which they have not been properly counseled, or have not received, and are not in evidence.'
"THE COURT: Yes, Sir. Your objection is overruled. Again, the particular charge is in compliance with 1.02 of the Penal Code of Texas. Anything further?
"MR. LAINE: No, Your Honor." [S/F 137–38].

3. All emphasis is supplied by the author of this opinion unless otherwise indicated.

struct the jury on the objectives of the Penal Code because such an instruction "would constitute a comment on the weight of the evidence." *Crain,* supra, at 169.

■ In *Hart, White,* and *Crain,* the trial judge *refused* to allow an instruction on the objectives of the Penal Code. There does not appear to be any case decided by this Court dealing with on the propriety of a trial judge *submitting* such an instruction. We now hold that, contrary to the inferential dicta in *Hart, White,* and *Crain,* an instruction on the objectives of the penal code is proper.

Texas law requires that the trial judge charge the jury with the "law applicable to the case." Art. 36.14, V.A.C.C.P. A trial judge, therefore, must assay the case before it can ascertain what law is applicable to the case. Some law is *required* to be submitted. *Zuckerman v. State,* 591 S.W.2d 495 (Tex.Cr.App.1979) (essential elements of offense must be submitted for conviction on offense), while other law is submitted at the *discretion* of the trial judge, *York v. State,* 566 S.W.2d 936 (Tex. Cr.App.1978) (admonitory instructions given at discretion of trial court). We find that a charge on the objectives of the Penal Code as listed in § 1.02, supra, to be discretionary. *Hart,* supra at 716–717 ("[T]he refusal to submit such an instruction was not an abuse of discretion."). To the extent that *Hart* and its progeny conflict with this holding, they are overruled.[4]

The objectives of the Penal Code embodied in § 1.02, supra, are the clear statements of the legislature as to its objectives in formulating a set of laws governing criminal conduct. As such, those objectives arguably could be considered relevant to the disposition of any criminal case. An instruction on those objectives, much like an admonitory instruction, would be discretionary because it does not involve the law applicable to the facts of the case. The instruction is simply informational that the judge may, in his discretion, find to be helpful to the jury. We find no logic in the

proposition that such an instruction would constitute a comment on the weight of the evidence or invite the jury to speculate on matters outside of the evidence. A trial judge, therefore, does not abuse his discretion in submitting a charge which includes § 1.02 of the Penal Code.

■ Appellant further argues that the trial court in the instant case failed to submit an instruction which included all of § 1.02. It is clear that a charge must include an accurate statement of the law. *Johnson v. State,* 571 S.W.2d 170, 173 (Tex. Cr.App.1978). In charging the jury as to the objectives of the Penal Code, the trial judge failed to include subsections (4), (5), and (6) of § 1.02. The charge as given, therefore, was an inaccurate statement of *all* of the objectives of the Penal Code and constituted an erroneous charge. We quote with approval the language used by the Beaumont Court of Appeals in dealing with a charge using an identically incomplete instruction on § 1.02:

"We note that the 'Objectives of Code' should also be to safeguard conduct that is without guilt from condemnation as criminal; and to guide and limit the exercise of official discretion in law enforcement to prevent arbitrary or oppressive treatment of persons accused or convicted of offenses. 'Objectives of Code' are also to define the scope of the state interest in law enforcement against specific offenses and to systemize the exercise of state criminal jurisdiction. These crucial objectives were omitted. The inclusion of the last three paragraphs of *Section 1.02* would make the charge more balanced. We believe the better practice would be that, if the trial judge is going to charge on the 'Objectives of Code,' he *charge on all of them and not just part of them."* [emphasis in original] *Wilson,* supra, at 542.

Having found error in the charge, we now must determine what standard of review is required. *Almanza v. State,* 686

---

**4.** We note that *White* and *Crain* were cases involving the death penalty. We have no reason

to believe that any distinction arises in those premises.

S.W.2d 157 (Tex.Cr.App.1985). Appellant failed to object at trial to the exclusion of subsections (4), (5), and (6) of § 1.02. Appellant's objection only complained of *any* submission of § 1.02. We have dispensed with that objection and see no remaining objection that notifies the trial court of an *inaccurate* charge. Under *Almanza,* if the accused failed to object at trial, then reversal will result "only if the error is egregious and created such harm that he 'has not had a fair and impartial trial'—in short, 'egregious harm.'" *Almanza,* supra, at 171.

Having found charging error which was not objected to at trial, we reverse the court of appeals and remand this case for consideration of whether the trial court's charging error resulted in the denial of a fair and impartial trial under the standard enunciated in *Almanza,* supra, and for consideration of the remaining grounds of error raised by appellant.

McCORMICK, MILLER and WHITE, JJ., concur.

TOM G. DAVIS, J., not participating.

CLINTON, Judge, dissenting.

LADIES AND GENTLEMEN OF THE JURY:

By your verdict returned in this case you have found the defendant guilty of the offense charged in the indictment, to wit, aggravated kidnapping. It is necessary now that the jury assess and fix punishment for this offense, and in the exercise of its discretion the court gives you the following informational instructions that may be helpful to you in arriving at a just punishment:

No citizen of this State shall be deprived of life, liberty, privileges or immunities except by the due course of law. Due course of law includes procedural safeguards, among the objectives of which are to insure a fair and impartial trial. To that end the law imposes certain duties of officers in the criminal justice system.

It is the duty of the trial court, the attorney representing the defendant, the attorney representing the State and all peace officers to so conduct themselves as to insure a fair trial for both the State and the defendant, and at the same time afford the public the benefits of a free press.

A judge should be faithful to the law and maintain professional competence in it. He should be unswayed by partisan interests, public clamor, or fear of criticism, and so should a jury in assessing punishment.

It is the primary duty of all prosecuting attorneys not to convict but to see that justice is done. They shall not suppress facts or secrete witnesses. They shall make timely disclosure to attorney for defendant of any evidence that tends to reduce the punishment.

It is the duty of attorney for the defendant and to the criminal justice system to represent his client zealously within the bounds of the law, but he should not by subterfuge put before a jury matters which it cannot properly consider on the matter of punishment. He should present any admissible evidence his client desires unless he knows, or from facts within his knowledge should know, that such testimony or evidence is false, fraudulent or perjured.

During your deliberations on punishment is the time as well to talk of many things:

Of shoes—and ships—and sealing wax—
    Of cabbages—and kings—
And why the sea is boiling hot—
    And whether pigs have wings.*

ONION, P.J., joins.

TEAGUE, Judge, dissenting.

It sometimes amazes me what a majority of this Court will purchase from drummers representing the State who bring faulty and defective merchandise to this Court to sell. However, in this instance, the majority opinion, if carefully read and studied, should not only scare the living hell out of all criminal defense lawyers of this State,

* Carroll, *Through the Looking-Glass.* Ch. 4, quoting the Walrus.

but prosecutors of this State as well. If carefully read and studied, the majority opinion should easily get the blood of controversy in all of their necks. *Ex parte McWilliams*, 634 S.W.2d 815, 828 (Tex.Cr. App.1982).

The action that a majority of this Court takes today closely resembles what the Cato Institute, a highly respected Washington, D.C., based public research institute, recently stated about the Supreme Court of the United States: "The Supreme Court 'has entered an era of aggressive majoritarianism.'" *Trial*, July, 1985. Today, a majority of this Court, by approving the majority opinion, follows in the steps of the present Supreme Court of the United States.

The question that is before this Court is whether this Court is going to approve an "innovative" trial judge's action in instructing the jury on what guidelines the citizens of this State expected the jury in this cause to follow in assessing appellant's punishment.[1] The majority opinion erroneously answers the question in the affirmative. The majority opinion, unfortunately, gives no hint of what is in store for the Bench and Bar of this State tomorrow. But, see the dissenting opinion that Judge Clinton has filed in this cause.

The Beaumont Court of Appeals, in a unanimous opinion authored by its Chief Justice, Hon. Martin Dies, Jr., correctly and properly ordered the appellant's conviction reversed after it found that the instruction that was given by the "innovative" trial judge in this cause, which instruction is a modified, but incomplete, version of the "Objectives of the Penal Code," see V.T. C.A., Penal Code, Section 1.02, should not have been submitted to the jury.[2]

What the majority opinion obviously overlooks, in approving what the trial judge did in this cause, is the fact that Section 1.02 is simply a preamble, stating what the Legislature intended to accomplish when it enacted the Penal Code. It is not, however, an essential part of the Code,

---

1. The record reflects that Melvin Anthony Cane, appellant, at the time of the offense, was an 18-year-old black male who was totally deaf. Appellant's reputation witnesses testified that he had a good reputation in the community of Port Arthur for being truthful and peaceable. The jury assessed the prosecuting attorney's recommended punishment of 20 years confinement in the Department of Corrections.

2. Section 1.02 provides:

The general purposes of this code are to establish a system of prohibitions, penalties, and correctional measures to deal with conduct that unjustifiably and inexcusably causes or threatens harm to those individual or public interests for which state protection is appropriate. To this end, the provisions of this code are intended, and shall be construed, to achieve the following objectives:

(1) to insure the public safety through:

(A) the deterrent influence of the penalties hereinafter provided;

(B) the rehabilitation of those convicted of violations of this code; and

(C) such punishment as may be necessary to prevent likely recurrence of criminal behavior;

(2) by definition and grading of offenses to give fair warning of what is prohibited and of the consequences of violation;

(3) to prescribe penalties that are proportionate to the seriousness of offenses and that permit recognition of differences in rehabili-

tation possibilities among individual offenders;

(4) to safeguard conduct that is without guilt from condemnation as criminal;

(5) to guide and limit the exercise of official discretion in law enforcement to prevent arbitrary or oppressive treatment of persons accused or convicted of offenses; and

(6) to define the scope of state interest in law enforcement against specific offenses and to systematize the exercise of state criminal jurisdiction.

[Acts 1973, 63rd Leg., p. 883, ch. 399, § 1, eff. Jan. 1, 1974.]

The instruction that was given is as follows: OBJECTIVES OF LAW:

In arriving at your verdict, you should consider the following objectives of our criminal law:

(1) To insure the public safety through:

(A) The deterrent influence of the penalties provided:

(B) The rehabilitation of those convicted, and;

(C) Punishment as may be necessary to prevent likely reoccurrence of criminal behavior.

(2) To give fair warning of what is prohibited and of the consequences of violation.

(3) To prescribe penalties that are proportionate to the seriousness of the offense and that permits recognition of differences in rehabilitation possibilities among individual offenders.

as the majority expressly holds. Cf. 1058 *Black's Law Dictionary*. Probably the most distant thought in the minds of our Legislators when they passed the present Penal Code was the fact that some "innovative" trial judge would instruct a jury on the preamble.

The law of this State, either expressly or implicitly, has long condemned giving such an instruction as was given in this cause. See *Crain v. State*, 394 S.W.2d 165 (Tex. Cr.App.1965); *White v. State*, 165 Tex. Cr.R. 339, 306 S.W.2d 903 (Tex.Cr.App. 1957); *Hart v. State*, 634 S.W.2d 714 (Tex. Cr.App.1982). I believe we can infer from this that trial judges of this State have religiously followed what this Court has previously stated and held, and that the trial judge in this cause is the exception.

The above instruction flies in the face of not only the fact that a jury's decision to assess punishment is virtually without limitation, but actually amounts to an appeal by the trial judge that the jury in this cause should take into consideration the expectations of the citizens of this State in deciding appellant's punishment, and not decide the issue on the merits of the case. The trial judge, by giving the instruction, became an advocate, which is alien to our law.

A trial judge, however, is not supposed to be an advocate. In fact, Art. 38.05, V.A.C.C.P., provides in part that a trial judge shall not, at any stage of the proceeding, previous to the return of the jury's verdict on guilt or punishment, make any remark calculated to convey to the jury his opinion of the case or what he thinks the proper punishment should be. Thus, in Texas at least, a trial judge is duty bound to plainly state the law of the case to the jury, without expressing his opinion on any phase of the case. He also may not discuss the facts of the case or use any argument in his charge to the jury to arouse the jurors' sympathies or excite their passions, and may not instruct them on what he believes that the citizens of this State expect them to do. Of course, a trial judge has always been prohibited from advising the jury how to reason the facts, and, by a dissertation, however shaped, may not instruct them on the weight and effect of the evidence. The trial judge always must avoid even the appearance of any intimation of how he might think or what he might believe. This has been the law of this State at least since 1877, see *Johnson v. State*, 1 Tex.App. 609, and, with few exceptions, such as here, trial judges of this State have religiously subscribed to the above principles of law.

It has also long been the law of this State that it is improper for a trial judge to give an instruction to the jury on the objectives of the Penal Code, because such an instruction constitutes a comment by the trial judge to the jury on what guidelines he believes that the citizens of this State expect the jury to follow in deciding the accused's guilt or in assessing the defendant's punishment. See *White v. State*, supra, and *Crain v. State*, supra.

The District Attorney of Jefferson County argues that the instruction was an admonitory instruction, given "to guard against jury misconduct by spelling out the factors allowed by law to be considered in assessing punishment and thereby preventing the jury from throwing any improper factors into the equation." I find that this statement is almost as ludicrous as the statement that a majority of this Court made in *Ex parte McWilliams*, 634 S.W.2d 815, 822 (Tex.Cr.App.1982) (On State's Motion for Rehearing), when it stated that the doctrine of carving must be abandoned because it encouraged crime.

Appellant's counsel is absolutely correct when he states that "The State is chasing after windmills in its interpretation [of what constitutes an admonitory instruction]."

This was no admonitory instruction. An admonitory instruction is one that *cautions* jurors about their duties and conduct when acting as jurors. An admonitory instruction does not tell them about what the citizens of this State expect them to do when acting as jurors.

The instruction actually was tantamount to an instruction from the trial judge to the jury that in assessing appellant's punishment the jury should punish him severely enough so that his cries of pain would be heard by all of the citizens of this State, thus taking care of deterrence, rehabilitation, and punishment all at the same time.

The Assistant State Prosecuting Attorney, understandably without citing a single authority, also makes the laughable suggestion, which the majority blindly adopts, that this instruction amounted to nothing more than an instruction on the law applicable to the case. The correct rule, however, is that the jury charge should instruct the jury on the law applicable to every theory within the scope of the indictment which the evidence tends to establish, whether favorable to the State or the defendant. *Christian v. State*, 71 Tex.Cr.R. 566, 161 S.W.101 (Tex.Cr.App.1913). Furthermore, a preamble is not part of the law of this State.

The Assistant State Prosecuting Attorney also makes the laughable suggestion, again without citing any authority to support his statement, that to disapprove what the trial judge did in this cause "will throw a wet blanket on the efforts of trial judges in this State to improve upon court's charges." It will not. Disapproval by this Court of the instruction that was given in this cause will teach any "innovative" trial judge to follow the law that has been in existence for over 100 years. Approval will amount to this Court telling "innovative" trial judges that the gate is open and let the horses run wild. And, believe me, we have more than enough "innovative" trial judges in this State.

I now return to my statement that the prosecutors of this State should also become alarmed over the majority opinion. Well, as we are all taught, a good rule of law works both ways. In this instance, the appellant proved up his application for probation. Here are some questions I have for the prosecutors of this State: Will this Court now reverse a conviction when a trial judge refuses to instruct the jury on the preamble contained under Art. 42.12, V.A. C.C.P.? Will it reverse a conviction when the trial judge refuses to give a modified version of the preamble? Will it reverse a conviction because the trial judge refused to give all of the instructions that Judge Clinton has set out in the dissenting opinion that he has filed? Will it now be reversible error for a trial judge to refuse to instruct the jury on the basic services of the probation department? Will this Court reverse a conviction because the trial judge refused to instruct the jury on the fact that in 1984 the probation departments of this State collected $64,219,406.00 and that 427,-792 hours of community services were performed by probationers of this State? Will it be reversible error for a trial judge not to instruct the jury that in 1984 the average rate of probationers who successfully completed probation was 81%? Will it be reversible error for the trial judge not to instruct the jury that the taxpayers' cost per probationer per day was $.686 but that the taxpayers' average cost per prison inmate per day was $22.60? If a good rule of law works both ways, refusal to grant any of the above instructions should constitute reversible error.

Where will this Court draw the line on what instructions must be given the jury where the defendant has made application for probation? Also see *Jurish v. State*, (Tex.Cr.App. No. 1148 & 49–83, 10/2/85).

When this Court's opinion of "Almanza the Terrible" was handed down, I did not believe a more egregious opinion would ever be handed down by this Court. I was mistaken. Stay tuned until Wednesday next because the aggressive majority of this Court is on a roll.